IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Wendy C. H. Wellin, on behalf of the Estate of Keith S. Wellin as its duly appointed Special Administrator,<br><br>       Plaintiff,<br><br>  vs.<br><br>Thomas M. Farace, Esq., individually and as agent for Nixon Peabody, LLP and Nixon Peabody Financial Advisors, LLC; Nixon Peabody, LLP; and Nixon Peabody Financial Advisors, LLC,<br><br>       Defendants. | Civil Action No. 2:16-cv-00414-DCN<br><br><br><br>**MOTION FOR PROTECTIVE ORDER** |

  Pursuant to Federal Rule of Civil Procdure 26 and Local Rule 30.04 (D.S.C.), Defendants Thomas M. Farace, Nixon Peabody, LLP, and Nixon Peabody Financial Advisors, LLC (collectively, "Defendants") seek an order protecting Defendants' expert witness, Professor Jay Carlisle, from having to answer questions related to to Professor Carlisle's discussions with defense counsel in preparation for his deposition.  During the deposition, Plaintiff's counsel asked Professor Carlisle numerous questions regarding information reviewed and discussed during his meeting with defense counsel on the day prior to his deposition, specifically referencing information improperly overheard by Plaintiff or her counsel who listened in to portions of the meeting over the telephone.  Because the information Plaintiff seeks to discover is protected by the work product doctrine and the express provisions of Rule 26(b), the motion for protective order should be granted.

  Additionally, pursuant to Rule 30(d)(3)(B), Defendants move this court to terminate the reaminder of Professor Carlisle's deposition.  Because Plaintiff's counsel was late to the

deposition and used the deposition, not to ask Professor Carlsile about the opinions expressed in his report, but to probe into the communications between Plaintiff and defense counsel that took place the day before, the deposition should be deemed ended.

## BACKGROUND

On July 24, 2018, Professor Carlisle and counsel for Defendants met in New York City to prepare for his deposition, which was scheduled for the following day. During this same time, Plaintiff was deposing Jim Hardin, also an expert for Defendants, in Columbia, South Carolina. At some point during the meeting with Professor Carlisle, defense counsel called in to the deposition of Jim Hardin in order to observe a portion of that deposition. After observing a brief period Mr. Hardin's deposition, defense counsel attempted to disconnect from the conference line. Unbeknownst to defense counsel, this attempt to disconnect was unsuccessful and the line remained open such that the subsequent conversations between Professor Carlisle and defense counsel could be heard over the telephone by others who were listening to Mr. Hardin's deposition remotely, including Plaintiff. Defense counsel learned this, not from Plaintiff's counsel, but from other defense counsel.

As soon as defense counsel learned that Plaintiff and her counsel were able to hear what was being discussed with Professor Carlisle, defense counsel immediately ended the call and notified Plaintiff's counsel to disregard the information overheard. Defense counsel sent an email to Plaintiff's counsel at 4:32 p.m., stating as follows:

> It has come to our attention that we did not disconnect from the conference call for Jim Hardin's deposition earlier this afternoon and that our conversation with Jay Carlisle during his preparation could be heard over the line. We are using Nixon Peabody's conference room and, due to our unfamiliarity with their telephone system, did not realize that we had not hung up after calling in to listen to some of Jim's testimony. It is our understanding that the attorneys at the deposition immediately disconnected. It is also our

> understanding that your client, as well as Edward Bennett, were also listening in. To the extent that they were, please ask them to disregard what they heard. The communication was privileged and it was inappropriate for them to continue listening once they realized who was speaking. We would hope that Edward Bennett as a lawyer understood this and immediately notified you of the issue so you could notify us.

A copy of this email correspondence is attached as **Exhibit A**.

Plaintiff deposed Professor Carlisle the following day. The deposition was noticed to begin at 9:30 a.m. on July 25, 2018, in New York City. The parties agreed to postpone the start time to 10:00 a.m. Plaintiff's counsel arrived at the deposition late, and the deposition did not commence until 12:29 p.m.

During the deposition, Plaintiff's counsel repeatedly asked Professor Carlisle questions related to information discussed and documents reviewed by Professor Carlisle the day before during his meeting with defense counsel. For example, Plaintiff's counsel asked Professor Carlisle (1) which documents he reviewed in the meeting with defense counsel, (2) the facts discussed in the meeting with defense counsel, (3) whether Professor Carlisle felt defense counsel "crossed the line in terms of proper preparation" for the deposition, and (4) whether defense counsel "coached" Professor Carlisle on his answers. Counsel for the Defendants objected to each of these questions and instructed the witness not to answer.

Despite defense counsel's request to disregard what was heard during the meeting on the day before, Plaintiff's counsel proceeded to use the information overheard during Professor Carlisle's deposition. On repeated occasions, Plaintiff's counsel asked Professor Carlisle questions that referenced words and phrases that were overheard from the meeting between Professor Carlisle and defense counsel. A copy of the relevant portions of the depositon are attached as **Exhibit B**.

3

The deposition concluded at 5:00 p.m. due to the witness's prior obligations. Throughout the entire deposition, Plaintiff's counsel did not ask Mr. Carlisle a single question related to the opinions expressed in his report. Plaintiff's counsel asked to be permitted to finish the entire seven hours another time, to which defense counsel responded that that be done by August 31, which is the current discovery deadline.

LAW

Federal Rule of Civil Procedure 26(b)(4)(C) expressly protects communications between a party's attorney and an expert witness providing a report, regardless of the form of the communications. The rule was amended in 2010 to "address concerns about expert discovery." See Advisory Committee Notes to 2010 Amendments. The purpose of the amendment was to "limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel" and "provide work-product protection" for communications between experts and counsel. See id.; Fed. R. Civ. P. 26(a)(2)(B) and (b)(4)(A-B).

The policy behind the work product doctrine has been stated as follows:

> In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift through what he considers to be the relevant from the irrelevant facts, prepare his legal theories, and plan his strategy without undue and needless interference.

*Hickman v. Taylor*, 329 U.S. 495, 510-511 (1947).

The exceptions to this protection are when the communications with the expert: "(i) relating to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed;

4

and (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Rule 26(b)(4)(C)(i-iii).

ARGUMENT

The motion for protective order should be granted. Plaintiff is not entitled to discover the information discussed during the meeting between Professor Carlisle and defense counsel in preparation for his deposition. The information sought falls squarely within the protection provided by Rule 26(b)(4)(C) and is protected by the work product doctrine.

Rule 26(b)(4)(C) provides protection for all communication between a party's attorneys and its expert witnesses "regardless of the form of communications." The communications between defense counsel and Professor Carlisle in preparation for his deposition are precisely the types of communications protected by Rule 26(b)(4)(C). The documents reviewed and the facts discussed with Professor Carlisle reflect counsel's mental impressions of the case and the relevant facts. Plaintiff and her counsel were not invited to the meeting and are not entitled to discover what was discussed during the meeting.

None of the exceptions to Rule 26(B)(4)(C) applies. The conversations between Professor Carlisle and defense counsel did not relate to compensation for Professor Carlisle's testimony. The conversation between defense counsel and Professor Carlisle in preparation for his deposition did not "identify facts or data" or "assumptions" that Professor Carlisle relied on in forming his opinions in the case. The opinions to be expressed by Professor Carlisle are set forth in his report dated February 15, 2018. Communications with counsel on July 24, 2018, the day before Professor Carlisle's deposition, could not have been relied upon in forming his opinions in the case, which were formed and reduced to writing months earlier.

Plaintiff's counsel did not ask Mr. Carlisle a single question related to the opinions expressed in his report. Instead, Plaintiff's counsel used the deposition to probe into the details of the meeting with defense counsel and to attempt to discover the private, confidential, and protected communications that took place between counsel and Professor Carlisle, requiring defense counsel to object and instruct the witness not to answer approximately sixteen times. Plaintiff's counsel repeatedly asked questions related to the meeting despite defense counsel's request that the information learned from improperly listening to the conversation the day before be disregarded.

## CONCLUSION

Because the information sought is privileged and protected under Rule 26, Defendants request the entry of an order protecting Professor Jay Carlisle from having to answer questions related to what was discussed during the meeting with defense counsel the day before his deposition.

Defendants further request that the Court enter an order terminating the deposition. Plaintiff had the chance to depose Professor Carlisle, and rather than use that time to ask questions related to the opinions expressed in the report, Plaintiff used the time to try to discover privileged communications and relied upon improperly obtained information to do so.

Prior to filing this motion, the undersigned counsel conferred with opposing counsel about resolving this matter before bringing it to the Court's attention.

ROBINSON GRAY STEPP & LAFFITTE, LLC


By:   s/ Tina M. Cundari
     Robert E. Stepp (Fed. I.D. No. 4302)
     Tina M. Cundari (Fed. I.D. No. 9679)
     William H. Jordan (Fed. I.D. No. 10174)
     Benjamin R. Gooding (Fed. I.D. No. 11897)
     1310 Gadsden Street
     Columbia, South Carolina 29201
     (803) 929-1400
     rstepp@robinsongray.com
     tcundari@robinsongray.com
     wjordan@robinsongray.com
     bgooding@robinsongray.com

***Attorneys for Defendants***

Columbia, South Carolina
August 1, 2018