## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISCTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| Wendy C. H. Wellin, on behalf of the Estate of Keith S. Wellin, as its duly Appointed Special Administrator, | ) ) ) ) | C/A 2:16-cv-00414-DCN |
|  | ) | **SPECIAL MASTER'S REPORT AND** |
| Plaintiff | ) | **RECOMMENDATION RE:** |
| vs. | ) | **DEFENDANTS' MOTION** |
|  | ) | **FOR PROTECTIVE ORDER,** |
| Thomas M. Farace, Esq., individually | ) | **ECF NO. 110** |
| and as agent for Nixon Peabody, LLP | ) |  |
| and Nixon Peabody Financial Advisors, | ) |  |
| LLC.; Nixon Peabody, LLP; and Nixon | ) |  |
| Peabody Financial Advisors, LLC, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

Currently before the undersigned is the motion of the Defendants seeking a protective order preventing the Plaintiff from asking any further deposition questions of Defendants' expert witness, Professor Jay Carlisle, related to Professor Carlisle's discussions with defense counsel in preparation for his deposition. This motion is made pursuant to Rule 26 of the Federal Rules of Civil Procedure, and Local Rule 30.04 (D.S.C.). Defendants also move to terminate the remainder of Professor Carlisle's deposition pursuant to Rule 30(d)(3)(B), Fed.R.Civ.P.  The motion was filed on August 1, 2018.  Plaintiff filed a Response on August 15, 3018, ECF No. 116, and Defendants thereafter filed a Reply to the Response on August 22, 2018, ECF No. 117. The motion was heard by the undersigned on September 20, 2018, sitting as Special Master, pursuant to the May 30, 2017 Order of the United States District Court for the District of South Carolina, Charleston Division, Hon. David C. Norton presiding.

## FACTS/PROCEDURAL HISTORY

This legal malpractice action arises out of the alleged actions of the Defendants in the management of the estate plan for Plaintiff's decedent, Keith S. Wellin, spanning a twelve year period, from 2001 through 2013. The facts and procedural history of the case are thoroughly outlined in the Report and Recommendation of Special Master Re: Plaintiff's Motion For Protective Order For Wendy C.H. Wellin, filed September 5, 2018, ECF No. 118, and will not be reiterated here except for those facts pertinent to this motion.

## FACTS/PROCEDURAL HISTORY

The controversy leading to this motion occurred on July 24, 2018. On that day, defense counsel met with the Defendants' named expert witness, Professor Jay Carlisle (Professor Carlisle), in a conference room at the New York offices of Defendant Nixon Peabody for the purpose of preparing him for his deposition. Professor Carlisle's deposition was scheduled to be taken on the following day, July 25, 2018. At the same time as the conference with Professor Carlisle, the video deposition of another defense expert, Jim Hardin (Mr. Hardin), was taking place in Columbia, South Carolina, with multiple counsel appearing in person and by conference telephone from remote sites.[1]

During the meeting with Professor Carlisle, defense counsel called in to the deposition of Mr. Hardin to listen to a portion of that deposition. According to Defense counsel, after

---

[1] As noted in the Report and Recommendation of Special Master re: Defendants' Motion to Compel Legal Invoices, ECF No. 163, the underlying litigation that spawned this malpractice litigation, involving multiple adverse parties and suits, is ongoing. Several suits have been consolidated for purposes of discovery, as a result of which counsel from all sides have been privy to discovery, including the depositions taken in this case. The subject matter of the discovery naturally overlaps, as a result of which information obtained in the discovery in this case which may also pertain to the issues in the underlying litigation becomes available to adverse parties.

observing Hardin's deposition for a brief period, she attempted to disconnect from the call, but unbeknownst to her, she was unsuccessful in doing so. Counsel explained that the Nixon Peabody conference room phone system was wired through the speaker system, and is controlled by a touch screen remote located on the conference table. Instead of disconnecting from the call, as she thought she had successfully done, she instead muted the line so that she could no longer hear the other participants on the call, but they could hear her conversation with Professor Carlisle as she continued to prepare him for his deposition. As a result, the line remained open such that the subsequent conversations between defense counsel and Professor Carlisle could be heard over the telephone by others who were listening to Mr. Hardin's deposition remotely, including the Plaintiff in this case, Wendy C. H. Wellin. Defense counsel asserts both the Plaintiff and Plaintiff's counsel stayed on the line to listen to her privileged communications with Professor Carlisle even though Hardin's deposition was reportedly on a break during this time.[2]

According to Defendants, as soon as defense counsel learned that Plaintiff and her counsel were able to hear what was being said in the conference with Carlisle, defense counsel immediately ended the call and notified Plaintiff's counsel to disregard the information they overheard. At 4:22 P.M. that same day, defense counsel sent an email to Plaintiff's counsel which read as follows:

> It has come to our attention that we did not disconnect from the conference call for Jim Hardin's deposition earlier this afternoon and our conversation with Jay Carlisle during his preparation could be heard over the line. We are using Nixon Peabody's conference room and due to our unfamiliarity with their phone system, did not realize that we had not hung up after calling in to listen to some of Jim's testimony. It is our understanding that the attorneys at the deposition immediately disconnected. It is also our understanding that your client, as well as Edward Bennett, were also listening in. To the extent that they were, please ask them to disregard what they heard. The communication was privileged and it was

---

[2] Defendants also moved to disqualify Plaintiff's counsel, but withdrew this motion at oral argument.

3

inappropriate for them to continue listening once they realized who was speaking. We would hope that Edward Bennett as a lawyer understood this and immediately notified you of the issue so you could notify us.

The following day Carlisle's deposition was taken. The deposition was noticed by Plaintiff to begin at 9:30 A.M., but did not commence until 12:30 P.M. due to the late arrival of Plaintiff's counsel. The deposition continued until 5 P.M., at which time it was stopped to accommodate Professor Carlisle's schedule, with the understanding it was to be resumed to allow further questioning up to the normal seven hour time limit provided by Rule 30 (d)(1), Fed. R. Civ. P. at a later date.

## DISCUSSION

In this motion, Defendants seek a protective order prohibiting the Plaintiff from further inquiry into the July 24, 2018 deposition preparation communications between defense counsel and Professor Carlisle on the grounds that they are protected from disclosure by the work product doctrine, as set forth in Rule 26(b), Fed.R.Civ.P. They further argue the Plaintiff wasted the entire deposition time on July 25, 2018 inquiring into this prohibited line of questioning, and did not ask Professor Carlisle a single question related to his opinions contained in his report. They assert as a result that the deposition should be "deemed ended."

Defendants argue that the communications between defense counsel and Professor Carlisle during the July 24, 2018 deposition preparation conference were protected from disclosure pursuant to the provisions of Rule 26 as noted above, as protected work product. They acknowledge the Plaintiff was entitled to question Carlisle regarding the three subject areas identified in Rule 26(b)(4)(C)(i), (ii), and (iii). But they argue Plaintiff's questions were not a "genuine attempt" to discover the facts or assumptions relied on by Carlisle in forming his

4

opinions. Rather, they claim the questions posed in the deposition were aimed at discovering what was discussed during the preparation session in violation of Rule 26(b)(4)(C).

Plaintiff disagrees with these assertions. Plaintiff argues in response that the questions asked of Carlisle were permissible and followed "almost verbatim" the scope of permissible expert discovery allowed under Rule 26(b)(4)(C). Plaintiff also argues Defendant waived any work product protection afforded by Rule 26 to the communications between defense counsel and Carlisle by disclosing them on the open telephone line during the deposition of Mr. Hardin, thereby revealing the contents of the communications to the Defendants' adversary, Wendy Wellin. In this regard, Plaintiff asserts Mrs. Wellin was properly listening to the deposition of Mr. Hardin, and had no obligation to hang up. Plaintiff points out it was the decision of Defendants' counsel, apparently with Mr. Carlisle in the room, to call in to a deposition and hold a conversation, inadvertently or not, while connected to the open line.

Plaintiff further asserts that she heard defense counsel tell Professor Carlisle during the course of their communications that she intended to "coach" Carlisle in the preparation of his testimony. Based on this premise, Plaintiff argues she is entitled to explore whether Defendants' counsel improperly coached Professor Carlisle's testimony. In support of this argument, Plaintiff submitted an affidavit from Wendy C.H. Wellin in which she avers as follows:

> "During the time that [defense counsel] was speaking over the open deposition line, I heard her tell Mr. Carlisle that she intended to "coach" him on certain answers she wanted him to provide in his upcoming deposition. I also heard a male voice, that I believe was Mr. Carlisle, congratulate [defense counsel] on her "great ideas" regarding his testimony.

In reply to Plaintiff's response, Defendants assert the communications between defense counsel and Professor Carlisle in the deposition preparation session "do not fall within the exception under Rule 26." The basis for this assertion is that Carlisle testified in his July 25,

2018 deposition that his February 15, 2018 report contains all of the opinions he intends to offer. Defendants argue that because Professor Carlisle did not say he had formed any new opinions as a result of the deposition preparation that took place the day before, Plaintiff is not entitled to discover what was discussed during the meeting.

### A) <u>WAIVER</u>

As noted above, Plaintiff argues Defendant waived any work product protection afforded by Rule 26(b)(4)(C) to the communications between defense counsel and Carlisle by disclosing them on the open telephone line during the deposition of Mr. Hardin, thereby revealing the contents of the communications to the Defendants' adversary, Wendy Wellin.   Rule 502, Fed.R.Evid., addresses the issue of waiver regarding Attorney-Client Privilege and Work Product.  Rule 502(b) states as follows:

> (b)      **Inadvertent Disclosure.**      When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Rule 502 also addresses the effect of party agreements, stating:

> (e)      **Controlling Effect of a Party Agreement.**  An agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order.

Applying the above principles to the facts in this case, I conclude there has been no waiver by the Defendants.

Federal law applies to determine whether or not information is protected by the work-product privilege. This is so because the privilege is a creature of Federal Rule of Civil Procedure 26(b)(3), which codified the privilege as first recognized by the Supreme Court in Hickman v. Taylor, 329 U.S. 496 (1947).  See, Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 983-984 (4th Cir. 1992); Doe v. United States (In re Doe), 662 F.2d 1073, 1078 (4th Cir.1981) cert. denied, 455 U.S.1000, 102 S. Ct. 1632, 71 L.Ed.2d 867 (1982); First S. Bank v. Fifth Third Bank, N.A., Civ. No. 10-2097, 2013 WL 1840089 at 4 (D.S.C. May 1, 2013); United Coal Cos. V. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988); PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002). The party asserting the privilege bears the burden of establishing the documents the party seeks to protect were prepared in anticipation of litigation. In re Grand Jury Proceedings, Thursday Special Grand Jury, Sept. Term, 1991, 33 F.3d 342, 352 (4th Cir. 1994); see also, Carnes v. Crete Carrier Corp., 244 F.R.D. 694, 697 (N.D.Ga. 2007); United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir. 2006).  While the applicability of a privilege is governed by state law, waiver of the privilege is a matter of federal law.  Burnett v. Ford Motor Company, 2015 WL 1650439, at *6 (S.D. W. Va. April 14, 2015)(citing Fed. R. Evid. 502(f)).

Applying Rule 502(b) to the evidence in this case, I conclude it clearly establishes that the disclosure of protected communications between defense counsel and Defendants' expert in his deposition preparation session was an inadvertent mistake. There is no evidence Defendants intended to disclose these protected communications.

Plaintiff argues it was the decision of Defendants' counsel, apparently with Mr. Carlisle in the room, to call in to a deposition and hold a conversation, inadvertently or not, while connected to the open line.  This argument is loosely directed to the second consideration set

forth in Rule 502; that is, whether or not the holder of the privilege took reasonable steps to prevent the disclosure. However, in this case the parties entered into a Confidentiality Agreement which provided in relevant part as follows:

> **10.    Inadvertent Production of Privileged or Protected Information or Material: Claw-back Provision.**
>
>                 .   .   .
>
> The parties further agree that information or documents produced in this proceeding *will not* lose their privileged or protected status even though the inadvertent disclosure of the privileged or protected information or material could have been avoided if the supplying party had exercised reasonable care in the producing of the information or documents.

I conclude this provision is controlling, and it is therefore unnecessary for the court to consider the reasonableness of the defendants' conduct. See Fed. R. Evid. 502(e). However, even if reasonableness was an issue, defense counsel's actions to disconnect from the call-in for the Hardin deposition prior to resuming her preparation of Professor Carlisle were reasonable, though they were, in retrospect, inadequate.

The third consideration under Rule 502 is whether or not the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B). Here again, the actions of defense counsel lead me to conclude this criteria is met. Rule 26(b)(5)(B) states as follows:

> (B) *Information Produced.*
>
> If information produced in discovery is subject to a claim of privilege or protection as trial preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

The evidence in this case establishes defense counsel immediately discontinued the telephone call as soon as she learned the telephone line was still connected to the conference room and still in operation. Defense counsel then followed up with an email communication the same day directed to Plaintiff's counsel in compliance with Rule 26(b)(5)(B). This communication articulated the pertinent facts surrounding the breach, explained the inadvertent nature of the mistake to Plaintiff's counsel, and notified opposing counsel of their claim of work product protection. The email further requested that the Plaintiff and her counsel disregard what they had heard by listening in on the protected communications.

Based upon the above analysis, I conclude there has been no waiver of work product protection by the Defendants regarding the communications between defense counsel and Professor Carlisle in the deposition preparation session.

B. **PROPRIETY OF QUESTIONS ASKED AT THE DEPOSITION OF PROFESSOR CARLISLE**

Plaintiff next asserts that most of the questions propounded to Professor Carlisle at his deposition to which defense counsel objected follow the scope of permissible discovery allowed under Rule 26(b)(4)(C) "almost verbatim." To address this argument, it is necessary to review the applicable rules of civil procedure, and then apply them to each question individually. Each question is listed on Appendix A attached to and incorporated into this Report, and the questions are consecutively numbered for ease of reference.[3]

Rule 26(a)(2) provides general disclosure requirements for expert witnesses. Rule 26(a)(2) states in pertinent part, as follows:

---

[3] For ease of identification in the deposition transcript, the page and line numbers for each question are also provided. When two or more questions are subject to the same categorical ruling, they are listed together.

(A) *In General*.  In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses who must provide a written report*.  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report-prepared and signed by the witness-if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain

.  .  .

**(ii)** the facts or data considered by the witness in forming them;

Fed.R.Civ.P.  26(a)(2)(A)  and  (B).    The  Advisory  Committee's  Notes  provide  additional guidance, as follows:

> The refocus of disclosure on "facts and data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel.  At the same time, the intention is that "facts and data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients.  The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

Rule 26(b)(3)(A) and (B), Fed.R.Civ.P., state in applicable part as follows:

(3)  ***Trial Preparation Materials.***

(A)  *Documents and Tangible Things.*    Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent).  . . .

.  .  .

(B)  *Protection Against Disclosure.*    If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Rule 26(b)(4)(C) provides the following protection for communications between a party's attorney and expert witnesses:

**(4)  *Trial Preparation: Experts.***

.  .  .

(C)  *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.*    Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent the communications:

(i)      relate to compensation for the expert's study or testimony;

(ii)     identify facts or data that the party's attorney provided and that the expert considered in forming his opinions to be expressed; or

(iii)    identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

"For Rule 26 purposes, a testifying expert has 'considered' data or information if the expert has read or reviewed the privileged materials before or in connection with formulating his or her opinion."  McCormick v. Haliburton Energy Services, Inc., 2015 WL 2345310 at *1-2 (W.D. Okla. May 14, 2015)(citing In re Commercial Money Ctr., Inc., Equip. Lease Litig., 248 F.R.D. 532, 537 (N.D.Ohio 2008); see also Yeda Research and Dev. Co., Ltd. V. Abbott GMBH & Co., 292 F.R.D. 97, 105 (D.D.C. 2013); Carroll Co. v. Sherwin-Williams Co., No. WMN-11-1700, 2012 WL 4846167 at *3 (D.Md. Oct. 10, 2012)('parties must produce any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected.' ").  "Further, '[c]ourts have declined to adopt a definition [of 'considered'] that would necessitate an inquiry into the subjective mental processes of the testifying expert.'" McCormick, 2015 WL 2345310 at *2 (quoting In re Commercial Money Ctr., 248 F.R.D. at 537.

"Thus, experts have been deemed to have considered materials even when they have testified, under oath, that they did not consider the materials in forming their opinions." Id.

To each of the following lists of questions, defense counsel objected and instructed the witness not to answer on the grounds of attorney client privilege and work product protection.[4] Applying the provisions of Rule 26(b)(4)(C) to the first set of questions listed below, I conclude they seek information protected from disclosure under Rule 26(b)(4)(C), and are, therefore, improper.

> **Questions 1, 2, 4, 5, 6, 7, 11, 12, 13, 15, 18, 19, 20, 21, 22** – These questions do not relate to the expert's compensation; seek to identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or seek to identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed. Therefore, the objections were proper and should be sustained.

The Defendants argue the second set of questions, listed below, are also improper because the opinions to be expressed by Professor Carlisle are set forth in his report dated February 15, 2018. Consequently, they reason his communications with counsel in the course of his deposition preparation could not have been relied upon by Professor Carlisle in forming his opinions in the case, which were formed and reduced to writing months earlier.

The Defendants construe the provisions of Rule 26(b)(4)(C) too narrowly. As noted above, "[p]arties must produce any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected. Carroll Co. v. Sherwin-Williams Co., No. WMN-11-1700, 2012 WL 4846167 at *3 (D.Md. Oct. 10, 2012). "Further, '[c]ourts

---

[4] Although defense counsel asserted attorney client privilege as a basis for objection at the time of the deposition, Defendants have not argued attorney client privilege as a basis for the objection in their Motion or supporting memoranda. Instead, they rely solely upon their work product objection.

have declined to adopt a definition [of 'considered'] that would necessitate an inquiry into the subjective mental processes of the testifying expert.'" <u>McCormick</u>, 2015 WL 2345310 at \*2 (quoting <u>In re Commercial Monty Ctr.</u>, 248 F.R.D. at 537). "Thus, experts have been deemed to have considered materials even when they have testified, under oath, that they did not consider the materials in forming their opinions." <u>Id</u>.

The following questions asked by Plaintiff's counsel seek to identify facts or data concerning the case communicated to Professor Carlisle by defense counsel during the deposition preparation. Plaintiff is entitled to discover any such facts or data, even though they post-date Professor Carlisle's opinions contained in his written report. A part of the purpose of expert discovery is to discover not just the information the expert used in reaching his conclusions, but also what information he ignored or failed to properly incorporate into his analysis. *See, e.g.*, *Colindres v. Quietflex Mfg.*, 228 F.R.D. 567 (S.D. Tex. 2005) (observing that "information considered, but not relied upon, can be of great importance in understanding and testing the validity of an expert's opinion"). Thus, facts and data communicated to an expert witness after his initial, written report are "considered" by the expert in forming his or her opinion, even though they may be rejected and may not change the previously rendered opinion. Therefore, I conclude the following questions were proper, and the Defendants' objections should be denied.

> **Questions 3, 8, 9, 10, 14** – These questions ask the expert witness to identify facts and documents provided to him that he considered in forming his opinion, which is specifically allowed under Rule 26(b)(4)(C)(ii). Therefore, the objections were improper and the witness should be required to answer the questions.

## C.    <u>MOTION TO TERMINATE DEPOSITION OF PROFESSOR CARLISLE</u>

Defendants next move to terminate the deposition of Professor Carlisle pursuant to Rule 30(d)(3), Fed.R.Civ.P. Rule 30(d)(3) reads in applicable part as follows:

### (3) *Motion to Terminate or Limit*

**(A)** *Grounds.* At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.

The basis for this argument is Defendants' assertion that Plaintiff questioned the witness for approximately four and one-half hours on July 25, 2018, and spent the entire time asking him improper questions about his communications with defense counsel during his deposition preparation, never asking him about his expert report or his opinions regarding the case.

Conversely, Plaintiff asserts that Defendants' Motion for Protective Order and to terminate the deposition of Professor Carlisle should be denied. In this regard, Plaintiff argues that Plaintiff is entitled to explore through further cross-examination whether Defendants' counsel coached Professor Carlisle's testimony. The basis for this argument is the assertion by Plaintiff that, in listening in to the communications between defense counsel and Professor Carlisle, Plaintiff overheard defense counsel state to Professor Carlisle that she intended to coach him on certain answers she wanted him to provide in his upcoming deposition. Plaintiff further stated that she heard a male voice, believed to be that of Professor Carlisle, congratulate defense counsel on her "great ideas" regarding his testimony.

Defendants oppose further questioning regarding coaching, arguing Professor Carlisle has already been questioned on the subject, and has categorically denied that any coaching took place. In support of this position, Defendants point to the questioning by Plaintiff's counsel and the answers provided by Professor Carlisle during the deposition, as follows:

Q.     Let me ask you this: As a – You're holding yourself out as an expert in ethics, correct?

A.     I believe I am considered in the State of New York to be an expert in legal ethics, yes.

14

Q.    Okay.  At any time during your discussion yesterday with Ms. Cundari, did you feel that she crossed the line in terms of proper preparation for your deposition today?

A.    Sir, I practiced law for almost 50 years.  I have a reputation in this state. I have a legacy.  Nobody puts words in my mouth.  I'm here testifying as an expert based on material that I've looked at and reviewed.  Ms. Cundari may be the best lawyer in South Carolina, but she doesn't tell Jay Carlisle what to say.  Do you understand me, sir?

Q.    I hear you.

A.    Thank you.

Q.    Now, yesterday did Ms. Cundari in fact acknowledge her intent to coach you on certain answers she wanted you to provide today?

A.    What do you mean by "coach"?

Q.    You never heard of witness coaching?

A.    I sure have.  I've taught it.  And I resent your suggestion that I was coached as a witness today.

Q.    Okay. So - -

A.    I don't consider myself to have been coached yesterday.  I've taught coaching.  There's three kinds of coaching.

Q.    What are the three kinds of coaching?

A.    One kind is when a – you're told exactly by a lawyer what you should say or shouldn't say.  Another kind is when the lawyer gives you hypotheticals and then, based on the hypotheticals, suggests that you testify a certain way.  And the third kind is very subtle.

Now Ms. Cundari talked to me about the case, but I decide, based on my review of the materials, what I'm going to testify to and how I'm going to respond to your questions.  She's not speaking for me.  She's not the expert.  I'm the expert.

(Deposition of Jay Carlisle, July 25, 2018) Dep. 27:2 – 28: 16

The burden of proof is with the party objecting to the discovery, to establish that the

challenged discovery should not be permitted. HDSherer LLC v. Natural Molecular  Testing

Corp., 292 F.R.D. 305 (D.S.C. 2013). Rule 26(b)(1) of the Federal Rules of Civil Procedure

states:

> Unless otherwise limited by court order, the scope of discovery is as
> follows: Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to the
> needs of the case, considering the importance of the issues at stake in the
> action, the amounts in controversy, the parties; relative access to relevant
> information, the parties' resources, the importance of the discovery in
> resolving the issues, and whether the burden or expense of the proposed
> discovery outweighs its likely benefit. Information within the scope of
> discovery need not be admissible in evidence to be discoverable.

Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure addresses limitations on

frequency and extent of discovery, and provides:

> (C) *When Required.* On motion or on its own, the court must limit the frequency
> or extent of discovery otherwise allowed by these rules or by local rule if it
> determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be
> obtained from some other source that is more convenient, less burdensome, or less
> expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the
> information by discovery in the action, or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

"District courts have 'wide latitude in controlling discovery and their rulings will not be

overturned absent a showing of a clear abuse of discretion.'" State Farm Fire and Casualty

Company v. Admiral Insurance Company, 225 F. Supp.3d 474,478-479, (D.S.C. 2016)(citing

Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986; Middleton v. Nissan Motor Co.,

No. 10-2529, 2012 WL 3612572, at *2 (D.S.C. Aug. 21, 2012). The Fourth Circuit has instructed

that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely

permitted." Allison v. McCabe, Trotter & Beverly, P.C., 2017 WL 6363635 *2 (D.S.C. Dec. 12,

2017)(quoting Carefree of Md., Inc. v. Carefree Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir.

2003). "Under Rules 26(b)(2)(C) and 26(c), 'the court has broad authority to limit discovery and prescribe alternative discovery mechanisms. <u>Minter v. Wells Fargo Bank, N.A.</u>, 258 F.R.D. 118, 124 (D. Md. 2009); in other words, to determine 'when a protective order is appropriate and what degree of protection is required. <u>Furlow v. United States</u>, 55 F.Supp.2d 360, 366 (D. Md. 1999)(quoting <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)).'" <u>In re C. R. Bard, Inc. Pelvic Repair Systems Product Liability Litigation</u>, 2014 WL 12703776, *2 (S.D.W.Va. June 6, 2014). "Nevertheless, protective orders 'should be sparingly used and cautiously granted.'" <u>Id.</u>, citing <u>Baron Fin. Corp. v. Natanzon</u>, 240 F.R.D. 200, 202 (D. Md. 2006 (quoting <u>Medlin v. Andrew</u>, 113 F.R.D. 650, 653 (M.D.N.C. 1987)).

"Generally, the party resisting discovery bears the burden of showing that the requested discovery is irrelevant to the issues or is overly broad, unduly burdensome, unreasonable, or oppressive." <u>Ashmore v. Allied Energy, Inc.</u>, 2016 WL 301169, *3 (D.S.C. Jan. 25, 2016).

Plaintiff's counsel argues entitlement to continue its line of questioning of Professor Carlisle at the resumption of his deposition regarding the issue of coaching. The underpinning for this line of questioning is tenuous. It is based solely upon Plaintiff's averment that she overheard defense counsel state that she intended to coach Professor Carlisle during his deposition preparation session, and an alleged remark by Professor Carlisle complimenting defense counsel on her "great idea" regarding his testimony. Plaintiff does not allege that she heard defense counsel actually coach her witness, and neither does anyone else. Defense counsel denies any such statement, and it is clear from the above quoted testimony of Professor Carlisle that he is thoroughly trained in this area of the law, and he, too, has adamantly denied that he was in any way "coached".

Certainly the roles of the witness and the attorney are different, and it is not within the purview of the lawyer to modify the witness's version of the facts. As the court stated in <u>Hall v. Clifton Precision</u>, 150 F.R.D. 525, 528 (E.D. Pa. 1993):

> "[t]he witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness – not the lawyer – who is the witness. As an advocate, the lawyer is free to frame those facts in a manner favorable to the client, and also to make favorable and creative arguments of law. But the lawyer is not entitled to be creative with the facts. Rather, a lawyer must accept the facts as they develop."

As Plaintiff points out, the South Carolina Rules of Professional Conduct prohibit the improper influencing of witnesses. Rule 3.4, RPC, Rule 407, SCACR. Comments to Rule 3.4 observe "[f]air competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improper influencing witnesses, obstructive tactics in discovery procedure, and the like." <u>Id.</u> To combat witness coaching, the Supreme Court has specifically noted cross-examination of a witness as a weapon to cope with "coached" witnesses. See <u>Geders v. U.S.</u>, 96 S.Ct. 1330, 425 U.S. 80, 90 (1976).

It is difficult to foresee what additional questioning of the witness regarding this subject could prove productive, given the questions and answers already posed. However, as the Court noted in <u>In re C. R. Bard, Inc.</u>:

> "Usually the subject matter of a deposition is not well defined in advance; thus, the need for prospective relief is more difficult to establish than in other methods of discovery. In addition, 'a motion can be made if any need for protection emerges during the course of the examination;' therefore, a ruling prior to a commencement of the deposition is not necessary to achieve a fair resolution."
>
> <u>Id.</u> (quoting 8 Wright & Miller, *Federal Practice and Procedure,* § 2037 (3d Ed.)).

As noted earlier in this Report, not all of Plaintiff's questions surrounding the deposition preparation communications were protected or privileged, and thus, those questions were proper and should have been answered. Likewise, even though the basis for the assertion of coaching may be tenuous, I conclude the Plaintiff was and is entitled to explore that line of questioning. For this reason, I conclude the Defendants have not shown a basis to terminate the deposition or to restrict the remaining two and one-half hour time allotted for the remainder of the deposition.

I reach this conclusion with the knowledge that Rule 30(d)(3) is the vehicle which allows for a motion to be made during the deposition if any need for further protection emerges. In re C. R. Bard, 2014 WL 12703776, at *2,

**FOR THE FOREGOING REASONS, IT IS RESPECTFULLY RECOMMENDED AS FOLLOWS:**

A) As to questions 1, 2, 4, 5, 6, 7, 11, 12, 13, 15, 18, 19, 20, 21 and 22, that the Defendants' Motion for Protective Order against disclosure be granted;

B) As to questions 3, 8, 9, 10 and 14, that the Defendants' Motion for Protective Order against disclosure be denied, and the witness required to answer the questions;

C) As to Defendants' Motion to Terminate the remaining Two and One-Half hours of Professor Carlisle's deposition, that the motion be denied and the deposition be reconvened.

**RESPECTFULLY SUBMITTED THIS** 5th **DAY OF** December , 2018

William L. Howard, Special Master

# APPENDIX A

## DEPOSITION OBJECTIONS

| Cite | Question | Objection |
|---|---|---|
| 20:2-21:9 | 1. Q. And which particular documents did you review? A. We reviewed some of the documents listed in my expert report. 2. Q. Do you remember which ones? A. We reviewed the tax transfer plan, we reviewed correspondence relating to the 2003 plan, then -- | MS. CUNDARI: I'm gonna – I'm gonna stop right now and object to this and instruct the witness not to answer. This is calling for the production of privileged information. What I reviewed with Jay is not -- is privileged. What I reviewed with Jay is privileged. |
| 21:18-25 | 3. Q. Okay. Yesterday during your meeting with Ms. Cundari, did she identify facts and documents provided to you that you considered in forming your opinion, correct? | MS CUNDARI: I'm going to object and instruct the witness not to answer on the grounds that is protected by the work product doctrine and the attorney-client privilege. |
| 22:17-22 | 4. Q. Well, can you tell me generally what you two discussed? | MS CUNDARI: I'm going to object and instruct the witness not to answer on the grounds of work product doctrine and attorney-client privilege. |
| 27:1-9 | 5. Q. Okay. In preparing for your deposition today? A. Yes. 6. Q. And what do you recall about what you heard? [RE PHOTOS] | MS CUNDARI: I'm going to object to the question and instruct the witness not to answer on the ground of the work product doctrine and attorney-client privilege. |
| 28:15-29:10 | 7. Q. During your meeting yesterday, did counsel for the defendants identify facts of decline to answer or descriptions comparing the relationship between Wendy and Keith Wellin as the Duke and Duchess of Windsor? | MS CUNDARI: I'm going to object to the question and instruct the witness not to answer on the ground that my communications with Mr. Carlisle yesterday were in preparation for this deposition and are protected by the work product doctrine and the attorney-client privilege, and on the further ground that it was inappropriate for any third party to be listening in to those communications and to use that testimony – those conversations in this deposition today. MR. HUMPHRIES: Is that an instruction not to answer? MS. CUNDARI: That is an instruction not to answer the question. I think that's how I started the question – the response. |
| 30:1-11 | 8. Q. During your meeting with counsel yesterday, did counsel identify facts or information, data of any sort, indicating that Mrs. Wellin was just Mr. Keith | MS CUNDARI: I'm gonna object to the form – I'm going to object to the question and instruct the witness not to answer on the ground of work-product |

## DEPOSITION OBJECTIONS

| | | |
|---|---|---|
| | Wellin's secretary?<br>A. No. | doctrine and attorney-client privilege. |
| 30:16-25 | 9. Q. Did counsel for the defendants here today identify facts or information, data of any sort, indicating that Mrs. Wellin simply wanted more money for herself as a result of the ongoing litigation? | MS CUNDARI: I'm going to object and instruct the witness not to answer the question on the ground that my conversations with Mr. Carlisle in preparation for his deposition are protected by the work product doctrine and the attorney-client privilege. |
| 31:19-32:5 | 10. Q. Okay. Can you think of any other facts, data, information of any sort that counsel shared with you yesterday that you considered but deemed relevant – deemed irrelevant –excuse me – in forming your opinions to be expressed today? | MS CUNDARI: I'm going to object and instruct the witness not to answer any questions related to my discussions with him yesterday in preparation for this deposition on the ground that they are protected by the work product doctrine and the attorney-client privilege. |
| 32:10-12, 32:21-33:5 | 11. Q. Do you have an understanding, sir, that Ms. Cundari has been in contact with Peter Wellin during the course of litigating this case?<br>…<br>12. Q. And is that a fact that was provided to you yesterday in preparation for this deposition?<br>A. No. | MS CUNDARI: I'm going to object to the question and instruct the witness not to answer any questions related to our communications yesterday in preparation for his deposition on the ground that the information is protected by the work product doctrine and the attorney-client privilege. |
| 38:18-39:13 | 13. Q. Okay. I do. Back to your preparation for the deposition today. In preparing for your deposition today, did counsel for the defendants identify facts or data or emphasize facts or data that were provided to you that you considered in forming your opinions to be expressed today that Keith was Tom Farace's client and not Peter Wellin? | MS CUNDARI: Object to the form of the question. I'm going to instruct the witness not to answer the question on the ground that I have stated repeatedly this afternoon, which is that my communications with Mr. Carlisle in preparation for this deposition are protected by the work product doctrine and the attorney-client privilege and that it is highly, highly inappropriate for anyone not invited to that meeting to be listening to that communication. And so I object to this entire line of questioning on those grounds. |
| 39:18-40:1 | 14. Q. In preparation for your deposition today, were you made aware of facts or data provided by Ms. Cundari or anyone else that you considered in forming your testimony today that Keith Wellin was really trying to protect himself from himself | MS CUNDARI: I'm going to object on the same ground previously stated and instruct the witness not to answer the question. |

## DEPOSITION OBJECTIONS

| | | |
|---|---|---|
| | through his estate planning? | |
| 41:6-13 | 15. Q. Okay. Did counsel identify that fact again for you yesterday in a communication in preparing for your deposition today? | MS CUNDARI: I'm going to insutrct and instruct the witness not to answer any questions relating to our private privileged communications yesterday in anticipation of this deposition today. |
| 42:1-11 | 16. Q. And you're going to follow counsel's instructions? A. I'm following counsel's instructions. I know my work product line. 17. Q. And the reason you're helping her out is because you know there's no privilege – A. I'm not helping her out. I'm helping you out. | MS CUNDARI: I'm going to object to the form of the question and instruct the witness not to answer. |
| 147:9-21 | 18. Did you discuss the concept and interest of Keith protecting himself from himself yesterday – A. No. 19. Q. – in preparing for this deposition – A. No. 20. Q. – with counsel for defendants? | MS CUNDARI: And I'm going to object and instruct the witness not to answer about any communications we had in preparing his deposition on the same ground I had before, which is the attorney work product doctrine and the attorney-client privilege. |
| 158:17-159:2 | 21. Q. Is the fact that Tom was not Peter's lawyer one of the facts that counsel for defendants provided and discussed with you yesterday in preparing for your deposition that you relied on in forming your opinions in testifying here today? | MS CUNDARI: I'm gonna object and instruct the witness not to answer the question. My communications with this witness in preparation for his deposition are protected by the work product doctrine and the attorney-client privilege. |
| 163:6-12 | 22. Q. Okay. Did you discuss this document during your prep session yesterday with Ms. Cundari? | MS CUNDARI: I'm going to object and instruct the witness not to answer the question on the basis of the work product doctrine and the attorney-client privilege. |