**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| WENDY C.H. WELLIN, *on behalf of the Estate of Keith S. Wellin as its duly Appointed Special Administrator*, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:16–cv–00414–DCN |
| vs. | ) ) | **ORDER** |
| THOMAS M. FARACE, ESQ., *individually and as agent for Nixon Peabody, LLP and Nixon Peabody Financial Advisors, LLC;* NIXON PEABODY, LLP; *and* NIXON PEABODY FINANCIAL ADVISORS, LLC | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

The following matter is before the court on defendants Thomas Farace, individually and as an agent for Nixon Peabody, LLP and Nixon Peabody Financial Advisors ("Farace"), Nixon Peabody, LLP ("Nixon Peabody") and Nixon Peabody Financial Advisors, LLC ("NPFA", together with Farace and Nixon Peabody, "defendants") motion for summary judgment, ECF No. 62 and 144. For the reasons set forth below, the court grants defendants' motion for summary judgment.

## I. BACKGROUND

On February 10, 2016, Wendy C.H. Wellin ("Wendy"), on behalf of the Estate of Keith S. Wellin as its duly appointed Special Administrator ("Estate"), filed a complaint against defendants for legal malpractice related to the estate planning services provided to Keith S. Wellin ("Keith") as his attorney and advisor. ECF No. 9 at 2.

In approximately 2001, defendants began representing Keith with respect to his estate planning, both individually and as Trustee of the Keith S. Wellin Florida

Revocable Living Trust dated December 11, 2001 ("Revocable Trust"), which defendants drafted on Keith's behalf. ECF No. 62–2 at 5–7. Keith discussed with Farace his desire to give a substantial portion of the Berkshire Hathaway Class A stock he owned to his three children in the most tax-advantaged way possible. Id. at 9. Keith and his children, Peter J. Wellin, Cynthia W. Plum, and Marjorie W. King (collectively, "Wellin Children") established Friendship Partners, L.P. ("Friendship Partners"), a Delaware Limited Partnership, on or around December 9, 2003 (the "2003 Partnership Agreement"). ECF No. 62–7. This limited partnership was established using the "Strangi"[1] strategy and was funded with 906 shares of Berkshire Hathaway Class A stock (the "Berkshire Stock"). ECF No. 62–4 at 23–30; ECF No. 62–7 at 26.

At the time Friendship Partners was formed, Keith was a limited partner and owned 98.9% of the partnership units. ECF No. 62–7 at 26. The general partner was Friendship Management, LLC ("Friendship Management"), a Delaware limited liability company, which owned the remaining 1.1% of the total partnership units. Id. The Wellin Children controlled Friendship Management, collectively owning 60% of the limited liability company in equal shares, and the remaining 40% was owned by a trust, the 2003 KSW Family Trust, the trustees of which were Farace, and a family friend. Wellin v. Wellin et. al., No. 2:13–cv–1831, ECF No. 301–1 at 22.

On November 7, 2006, Farace sent Keith a letter enclosing a compilation of Keith's net worth and taxable estate. ECF No. 62–8. In the letter, Farace stated that most practitioners were advising clients to no longer rely on the "Strangi" strategy for potential

---

[1] "Strangi" refers to Strangi v. Commissioner of Internal Revenue, 417 F.3d 468 (5th Cir. 2005), the case upon which the proposed strategy was based.

estate tax savings.  Id.  Farace stated it would be prudent to consider other strategies and

techniques, including a sale to an intentionally defective grantor trust, which was one of

the four options Farace presented to Keith in 2001.  Id.  Keith did not take any action at

that time, and the existing structure remained in place.  Id.

On December 19, 2007, Keith issued a notice of his intent to transfer his 98.9%

ownership interest of limited partnership units in Friendship Partners to the Revocable

Trust (of which the Wellin Children were the beneficiaries).  ECF No. 62–9.

Additionally, on December 26, 2007, Keith signed the following: (1) an Assignment and

Assumption of Limited Partnership Interest, (2) a document stating the Revocable Trust

agreed to be bound by the 2003 Partnership Agreement , and (3) a document agreeing to

pay the Revocable Trust any benefits to which the trust was entitled under the 2003

Partnership Agreement.  ECF No. 62–10–12.

On November 2, 2009, pursuant to the advice and direction of defendants, Keith

established the Wellin Family 2009 Irrevocable Trust ("2009 Irrevocable Trust") with

South Dakota Trust Company and the Wellin Children as the Trustees.  Farace was

named as Trust Protector.  ECF No. 62–13.  The Wellin Children were the Distribution

Advisors and the Investment Advisors of the 2009 Irrevocable Trust.  Id.  On November

30, 2009, the Revocable Trust sold its economic interest in Friendship Partners to the

2009 Irrevocable Trust for a promissory note ("2009 Promissory Note").  ECF No. 62–

20.  Following an independent appraisal, the value of the economic interest in Friendship

Partners was determined to be $49,800,000, which was approximately 55% of the value

of the underlying Berkshire Stock.  ECF No. 62–21.  The 2009 Promissory Note was

issued to the Revocable Trust with a face value of $49,800,000, interest only, payable in

kind.  Id.  The 2009 Promissory Note was subsequently restated several times, most

recently in 2012, to extend the due date of the principal owed and to reduce the rate of the

interest due to the Revocable Trust.  Wellin v. Wellin et. al., ECF No. 301–1 at 22.

After receiving a letter from Farace on January 6, 2010, Keith expressed

confusion regarding the impact of the 2009 Transaction on Keith's estate.  ECF No. 62–

22.  Farace sent a follow–up letter to Keith on January 10, 2010 where Farace attempted

clear up any confusion Keith had on the regarding the impact of the 2009 Transaction.

ECF No. 62–23.  Farace sent letters again in November 2011 and November 2012

summarizing the 2009 Transaction.  ECF No. 62–24.  At no point did Keith and Farace

discuss the impact of the 2009 Transaction if the Berkshire Stock were to be sold prior to

Keith's death.  Wellin v. Wellin et. al., ECF No. 599–5 at 5.

In June 2013, Farace was fired and on July 3, 2013, with new counsel in place,

Keith sued his three children seeking, among other things, to set aside the 2009

Transaction on the ground that the transaction was not in Keith's best interests.  Wellin v.

Wellin et. al., ECF No. 1. The complaint alleges that Keith "did not know or understand

that he had lost all control over and access to his partnership interests" in the 2009

Transaction.  Wellin v. Wellin et. al., ECF No. 301.  The complaint further alleges that

Keith "unknowingly sold his partnership interest for less than market rate while also

retaining the income tax liability should any of the [Berkshire Stock] or the partnership

interests be sold."  Id.  Neither the complaint nor the amended complaints challenge the

2003 transaction forming Friendship Partners.  Id.

Keith died on September 14, 2014.  Wellin v. Wellin et. al., ECF No. 231.  On

February 10, 2016, the Estate filed the present case against defendants alleging causes of

action for negligence, breach of fiduciary duty, breach of contract, and aiding and abetting breach of fiduciary duty. ECF No. 1. The Estate alleges that defendants designed and implemented estate planning structures in 2003 and 2009 that "failed to adequately protect the interests of [Keith]. . . ." ECF No. 9 at 11. The Estate further alleges defendants failed to "inform or advise [Keith] as to the inherent risks and consequences of participating in [the] transaction[s]." Id. at 11–14. Finally, the Estate alleges that defendants aided and abetted Peter J. Wellin and Cynthia W. Plum, in breaching fiduciary duties owed to Keith in connection with the 2009 Transaction. Id. at 15.

Defendants filed this motion for summary judgment on September 8, 2017 alleging the Estate should be barred by the three–year statute of limitations. ECF No. 62. The Estate responded to the motion on October 30, 2017, ECF No. 65, to which defendants replied on November 21, 2017, ECF No. 69. Defendants filed an additional motion for summary judgment incorporating its prior motion for summary judgment and asserting summary judgment should be granted due to: (1) the statute of limitations, (2) lack of evidence that Keith did not understand and agree to the 2009 Transaction (3) ratification, waiver, and/or estoppel, (4) lack of knowledge as to the claim of aiding and abetting a breach of fiduciary duty, (5) lack of any evidence showing NPFA performed any work on behalf of Keith Wellin, meaning NPFA is not liable to the Estate as a matter of law, (6) lack of any damages suffered as a result of the 2009 Transaction, and (7) lack of evidence to support the claims of attorney's fees and punitive damages. ECF No. 144. The Estate responded to defendants' new motion on November 15, 2018, ECF No. 155,

and defendants replied on November 30, 2018, ECF No. 166. The motions are now ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non–moving party and draw all inferences in its favor. Id. at 255.

## III. DISCUSSION

### A. NPFA

As an initial matter, the court will examine the argument that summary judgment should be granted to NPFA because there is no evidence that NPFA provided any services to Keith. ECF No. 144-1 at 29. The Estate acknowledges it has not discovered

any evidence suggesting that NPFA provided services to Keith, and accordingly, the Estate concedes that NPFA should be dismissed from this action.  ECF No. 155 at 28. Therefore, the court grants defendants' motion for summary judgment for all claims brought against NPFA as a matter of law.

The court now turns its attention to defendants' argument that the Estate should be barred from bringing all claims based on the relevant statute of limitations.

### B.  Statute of Limitations

Under South Carolina law, this action is governed by a three–year statute of limitation period.  S.C.Code § 15–3–530(1) &(5); see RWE NUKEM v. ENSR Corporation, 644 S.E.2d 730, 733 (S.C. 2007) (applying three year statute of limitations in breach of contract action); Stokes–Craven Holding Corp. v. Robinson, 787 S.E.2d 485, 489 (S.C. 2016) (concluding that section 15–3–530(5) of the South Carolina Code provides a three–year statute of limitations for legal malpractice actions).  "Under the discovery rule, the limitations period commences when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist."  Stokes–Craven, 787 S.E.2d 485 at 489; see S.C. Code Ann. § 15–3–535 (2005) ("[A]ll actions initiated under Section 15–3–530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action.").  "This standard as to when the limitations period begins to run is objective rather than subjective."  Stokes–Craven, 787 S.E.2d at 489 (quoting Burgess v American Cancer Society, South Carolina Division, Inc, 386 S.E.2d 798, 800 (S.C. Ct. App. 1989) (emphasis in original)).  "Therefore, the statutory period of limitations begins to run when a person could or should have known,

through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto." Id. at 490. (Emphasis in original). Before beginning an analysis of when the statute of limitations accrued and when it expired, the court must consider the Estate's assertion that either equitable estoppel or equitable tolling prevents the defendants from claiming the statute of limitations as a defense entirely.

### a. Equitable Tolling

"[I]n order to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits, the doctrine of equitable tolling may be applied to toll the running of the statute of limitations." Hooper v. Ebenezer Sr. Services and Rehabilitation Center, 687 S.E.2d 29, 32 (S.C. 2009) (citing 54 C.J.S. Limitations of Actions § 115 (2005)). "Where a statute sets a limitation period for action, courts have invoked the equitable tolling doctrine to suspend or extend the statutory period to ensure fundamental practicality and fairness." Id. (citation and internal quotation marks omitted). "The party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use." Id.

In Hooper, the South Carolina Supreme Court noted that equitable tolling "typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control." Id. Hooper held that, in general, equitable tolling is appropriate:

> (1) where the plaintiff has actively pursued his or her judicial remedies by filing a timely but defective pleading; (2) where extraordinary circumstances outside the plaintiff's control make it impossible for the plaintiff to timely assert his or her claim; or (3) where the plaintiff, by

exercising reasonable diligence, could not have discovered essential information bearing on his or her claim.

Equitable tolling applies either where the defendant is shown to have actively misled or prevented the plaintiff in some extraordinary way from discovering the facts essential to the filing of a timely lawsuit, or where the plaintiff has timely raised the same claim in the wrong forum.

Id. While the Hooper court stated that these circumstances were not an "exclusive list of circumstances that justify the application of equitable tolling", it cautioned that equitable tolling "should be used sparingly and only when the interests of justice compel its use." Id. at 33.

The South Carolina Supreme Court has not specifically enumerated the acts of an accused attorney in a legal malpractice action that would constitute an extraordinary event justifying equitable tolling. See Stokes–Craven Holding Corp., 787 S.E.2d at 495 n. 9 ("In view of our decision, we need not reach Stokes–Craven's contention that equitable doctrines precluded the application of the statute of limitations."). This court has previously examined when attorney conduct in a legal malpractice claim under South Carolina law justifies equitable tolling. See Vieira v. Simpson, 2015 WL 1299959 (D.S.C. Mar. 23, 2015). In Vieira, the plaintiff–client brought a legal malpractice claim against her attorney for inducing the plaintiff into not bringing a claim. Id. at 2. The plaintiff–client argued equitable tolling should apply because the defendant–attorney withheld information relating to the transaction at issue and acted adverse to plaintiff–client's interest, which caused the plaintiff-client not to bring a claim. Id. at *6. The facts showed that the plaintiff–client expressed concern that a conflict of interest may exist between the plaintiff–client and defendant–attorney. Id. This court held that such an expression constituted notice to the plaintiff-client that a claim of legal malpractice

9

may exist.  Id.  This court held that the attorney's withholding of information related to the transaction at issue and action adverse to the plaintiff–client's interest did not "induce the plaintiff into a false belief that his lawyer [was] acting on his behalf." Id.  The court held that plaintiff–client's notice of a potential claim against defendant-attorney made the attorney's withholding of information relating to the transaction and action adverse to plaintiff–client's interest an event "insufficient to meet their burden to equitably toll the statute of limitations."  Id.

Upon examining when attorney conduct qualifies as an extraordinary event justifying equitable tolling in a habeas corpus proceeding, the Supreme Court has held that the "garden variety claim" of negligence does not qualify as an extraordinary event justifying equitable tolling.  Holland v. Florida, 560 U.S. 631, 631 (2010). In Holland, the record facts show that the plaintiff–client identified the applicable legal rules for his attorney, the attorney subsequently failed to provide specific information to the plaintiff-client, despite the plaintiff–client's pleas for such information, and the attorney failed to communicate with the plaintiff–client over a period of years despite plaintiff–client's numerous demands for a response to letters sent.  Id.  Though not an absolute conclusion, Holland held that these record facts suggested that "this case may well present 'extraordinary [event].'"  Id.  When facing the same claim as in Holland, this court has previously held "attorney negligence, however gross or egregious, does not qualify as an 'extraordinary [event]' for purposes of equitable tolling; abandonment of the attorney–client relationship . . . is required."  Blake v. Walker–Staley, 2016 WL 1253185, at *4 (D.S.C. Mar. 31, 2016) (quoting Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 481 (11th Cir. 2014)).

This court recognizes that the cases do not give bright–line instance of when equitable tolling is or is not appropriate in legal malpractice cases. However, the court finds that these cases provide guidance on what may or may not be considered an extraordinary event to justify equitable tolling in a legal malpractice claim.  An extraordinary event to justify equitable tolling in a legal malpractice claim might occur when: (1) defendant–attorney's conduct amounts to abandonment of plaintiff–client, or (2) defendant–attorney ignores the plaintiff–client's demands for information when plaintiff–client specifically informs attorney how such information can be ascertained. An event in a legal malpractice claim may not be an "extraordinary event" such to justify equitable tolling in a legal malpractice claim when: (1) a defendant–attorney's withholding of information to the issue in question and action adverse to the plaintiff–client's interest exists but plaintiff–client is aware of a defendant–attorney's potential conflict or (2) the attorney's misconduct is simple negligence.

Viewing the facts in the light most favorable to the Estate, it is clear no extraordinary event has occurred such that equitable tolling would be appropriate in this instance. The Estate contends that the court should apply equitable tolling because when "Keith expressed confusion" over the impact of the 2009 Transaction defendants provided an explanation to Keith that was "misleading for a number of reasons" and did not contain important information regarding tax consequences to the Estate.  ECF No. 65 at 34–35.  The evidence shows that defendants sent Keith a letter on January 6, 2010. ECF No. 65–23. One week later, on January 13, 2010, Farace sent another letter that begins by stating "[i]t appears there is a bit of confusion . . . ", and then proceeded to provide a clarification on the impact of the 2009 Transaction.  ECF No. 65–24.  The court

11

finds it fair to conclude that the January 13, 2010 letter is a response to Keith's confusion after he received the January 6, 2010 letter. Even assuming this clarification was negligent, defendants' conduct clearly does not amount to abandonment of Keith. Furthermore, unlike the plaintiff–client in <u>Holland</u>, there is nothing in the record to show that Keith specifically asked for information regarding the Estate's tax liability in the event the Berkshire stock were to be sold during Keith's lifetime nor is there anything in the record to show that Keith identified the applicable legal rules on the Estate's tax liability in the event the Berkshire stock were sold during Keith's lifetime and gave such information to the defendants. Based on the totality of these facts, the court does not find the alleged misrepresentations in the January 13, 2010 letter are negligence that warrants equitable tolling.

Even assuming that defendants' withholding of information relating to the transaction at issue was the type of extreme negligence that would justify equitable tolling, the Estate expressed concern over defendants' "divided loyalties" between the Estate and the Wellin Children to defendants in an email on February 8, 2012.[2] ECF No.

---

[2] In the February 8, 2012 e–mail to Farace's assistant (at the assistant's Nixon Peabody email address), Wendy requested that Keith's will be sent to her email address so the will could be reviewed. Wendy stated in this e–mail that "we were thinking it through" in relation to what to do about Farace's divided loyalties between Farace and the Wellin Children. This court finds that this conduct is sufficient to establish an agency relationship between Wendy and Keith under South Carolina law, and therefore, Wendy's statement in the February 8, 2012 e–mail and Wendy's threat to fire Farace prior to April 2, 2012 due to his divided loyalties are imputed onto the Estate. <u>See</u> <u>Crystal Ice Co. of Columbia v. First Colonial Corp.</u>, 257 S.E.2d 496, 497 (1979) (holding that South Carolina law recognizes "the relationship of principal and agent if the parties, in the conduct of their affairs, actually place themselves in such position as requires the relationship to be inferred by the courts, and if, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency.").

65–34 at 2. In the February 8, 2012 e–mail, the Estate questions what Farace said to one of the Wellin Children, Cynthia W. Plum, to cause her to behave "hostile . . . to say the least" toward Wendy. Id. Questioning of Farace's conversation with Cynthia W. Plum is followed by the Estate expressing "concern . . .about [Farace's] divided loyalties." Id. The Estate then threatened to fire defendants because of these "divided loyalties" no later than April 2, 2012. ECF No. 65–35 at 6. Like the plaintiff–client in Vieira, the Estate was aware of a potential conflict with defendants, which provided the Estate notice it had a potential claim against the defendants. The Estate was on notice of a potential claim against defendants, and therefore, the fact that defendants withheld information relating to the transaction at issue and allegedly acted adverse to the Estate's interest is not an extraordinary event such that equitable tolling is justified.

South Carolina law requires that equitable tolling should be applied when "in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." Hooper, 687 S.E.2d at 33. Even assuming that defendants' misrepresentations in the January 13, 2010 letter were beyond "garden variety" negligence, in view of all the circumstances, the facts fail to demonstrate that defendants' conduct amounted to an "extraordinary event" or "gross wrong" such that equitable tolling is appropriate. Hooper, 687 S.E.2d 33. Construing all inferences in the light most favorable to the Estate, the court does not find that the Estate has provided evidence that justifies equitable tolling in a legal malpractice claim.

After considering the facts of this case, and mindful of the South Carolina Supreme Court's instruction that equitable tolling should only be used "sparingly," the court declines to apply equitable tolling to suspend or extend the three–year statute of

limitations. The Estate has not shown extraordinary events beyond its control, gross

wrongs or any other circumstances that prevented the Estate to warrant equitable tolling.

### b. Equitable Estoppel

"Under South Carolina law, a defendant may be estopped from claiming the

statute of limitations as a defense if the delay that otherwise would give operation to the

statute had been induced by the defendant's conduct." Kleckley v. Northwestern National

Casualty Company, 526 S.E.2d 218, 220 (2000). "The essential elements of equitable

estoppel are divided between the estopped party and the party claiming estoppel."

Strickland v. Strickland, 650 S.E.2d 465, 470 (S.C. 2007).

> The elements of equitable estoppel as related to the party being estopped
> are: (1) conduct which amounts to a false representation, or conduct which
> is calculated to convey the impression that the facts are otherwise than, and
> inconsistent with, those which the party subsequently attempts to assert; (2)
> the intention that such conduct shall be acted upon by the other party; and
> (3) actual or constructive knowledge of the real facts. The party asserting
> estoppel must show: (1) lack of knowledge, and of the means of knowledge
> of the truth as to the facts in question; (2) reliance upon the conduct of the
> party estopped; and (3) a prejudicial change of position in reliance on the
> conduct of the party being estopped."

Id. "To succeed on a claim for equitable estoppel, a party must prove 'lack of

knowledge, and the means of knowledge, of the truth as to the facts in question.'"

Rodarte v. University of South Carolina, 799 S.E.2d 912, 918 (S.C. 2017) (quoting

Strickland, 650 S.E.2d at 470). "One with knowledge of the truth or the means by which

with reasonable diligence he could acquire knowledge cannot claim to have been

misled." Southern Development Land & Golf Co. Ltd. v. South Carolina Public Service

Authority, 426 S.E.2d 748, 751 (S.C. 1993). The South Carolina Supreme Court has

discussed when a plaintiff–client could not show lack of knowledge, or means of

knowledge, of a potential legal malpractice claim against a defendant–lawyer. See

Mitchell v. Holler, 429 S.E.2d 793 (S.C. 1993). In Mitchell, the plaintiff–client argued she did not know about the alleged malpractice and a potential claim until the South Carolina Supreme Court reversed her conviction based on ineffective assistance of counsel. Id. at 795. The record facts established that the plaintiff–client complained about the defendant–attorney's conduct in providing legal services in March 1983. Id. The Mitchell court found this sufficient to prove plaintiff–client knew or had the means of knowing that a legal malpractice claim may exist in March 1983. Id.

The Estate argues defendants' silence on the risks and consequences of the 2009 Transaction should estop defendants from relying on statute of limitations as a defense. ECF No. 65 at 32–33. When silence is intended, or when it has the effect of misleading a party, it may operate to satisfy the elements of equitable estoppel as related to the party being estopped. Southern Development Land & Golf Co. Ltd., 426 S.E.2d 748 at 751. The court agrees with the Estate that as Keith's attorney, defendants and Keith had a relationship such that silence could possibly operate to satisfy the elements of equitable estoppel as related to the party being estopped. See Hedgepath v. Am. Tel. & Tel. Co., 559 S.E.2d 327, 339 (S.C. Ct. App. 2001) ("A duty to speak or disclose may be found . . . where it arises from a preexisting definite fiduciary relation between the parties"). While the court is mindful that "[t]he relationship between an attorney and a client is highly fiduciary in its nature and of a very delicate, exacting and confidential character" Ellis v. Davidson, 595 S.E.2d 817, 823 (S.C. Ct. App. 2004), the court finds that defendants' silence on the risks and consequences of the 2009 Transaction did not prevent from the Estate from the knowledge or the means of knowledge that a legal malpractice claim may exist.

As discussed above, the Estate complained of defendants' conduct in providing legal services to defendants in an email on February 8, 2012. ECF No. 65–34 at 2. The Estate then threatened to fire defendants because of this conduct no later than April 2, 2012. ECF No. 65–35 at 6. Like the plaintiff–client in <u>Mitchell</u>, the Estate's complaining of the defendants' conduct in providing legal services in February 2012 and again in April 2012 show that the Estate knew or should have known that there was a potential claim for legal malpractice. Construing all facts and inferences in the light most favorable to the Estate, the Estate cannot prove it lacked the knowledge or the means of knowledge, of the truth as to the facts in question – that there was a potential legal malpractice claim against defendants – equitable estoppel cannot be used here to prevent a statute of limitations claim. Therefore, the court declines to apply equitable estoppel to suspend or extend the three–year statute of limitations. The court will now begin its analysis on when the Estate's claims began to accrue under the statute of limitations and if such claims have expired to bar them under the statute of limitations.

### c. Accrual

The statute of limitations period begins to run when "the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist." <u>Stokes–Craven</u>, 787 S.E.2d at 489; <u>see</u> S.C. Code Ann. § 15–3–535 (2005) ("[A]ll actions initiated under Section 15–3–530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."). The parties disagree as to when the Estate knew or should have known that a cause of action for legal malpractice existed, and therefore, when the statute of limitations began to run. This case

was filed on February 10, 2016; however, on October 30, 2015, defendants and the Estate executed an agreement ("Tolling Agreement") that tolled the period between execution of the Tolling Agreement and date of filing. ECF No. 65–43. Therefore, to determine if the statute of limitations has run, there must be objective proof that the Estate knew or should have known that a cause of action for legal malpractice existed prior to October 30, 2012.[3]

Defendants argue that all the Estate's claims arise out of the 2009 Transaction, and therefore the statute of limitations began to run when the 2009 Transaction was executed on November 30, 2009, or when Keith received follow–up letters in 2010, 2011, and 2012 referring to the 2009 Transaction. ECF No. 62 at 21. On the other hand, the Estate argues that the statute of limitations did not begin running until the hiring of new tax and estate counsel alerted the Estate of "the truth about risks, consequences, and benefits" of the 2009 Transaction on sometime between June 2013 and July 3, 2013. ECF No. 65 at 28. The Estate relies on True v. Monteith, 489 S.E. 615 (S.C. 1997) to argue that "[c]lients are not expected to investigate their attorney's loyalties or the quality of their advice for each transaction", and therefore, could only have learned of the Estate's potential claim once new counsel was hired to examine the 2009 Transaction. ECF No. 65 at 27–28; see True, 489 S.E. 615 at 617 (holding that "absent other facts, the client should be able to rely on the attorney's advice and should be able to follow this

---

[3] The Tolling Agreement preserved "any defense available to any party as of the date of [the Tolling Agreement], and [the Tolling Agreement] shall not be deemed to revive any claim that is or was already barred on that date." ECF No. 65–43 at 4. The Tolling Agreement specifically states that "[t]he period between [October 20, 2015] and [February 10, 2016] shall not be included in determining the applicability of any statute of limitations . . defense." Id. at 1. The following analysis applies equally if the date of filing, February 10, 2016, is deemed to be the operative date as to when the action tolled.

advice without fear the attorney is not acting in the client's best interest"). The Estate also relies on Manios v. Nelson, Mullins, Riley & Scarborough, LLP, 697 S.E.2d 644, 654 (S.C. Ct. App. 2010), to further argue that there is conflicting evidence as when the Estate knew or should have known there was a cause of action, and therefore, the statute of limitations is a jury question. ECF No. 65 at 29–30; see Manios, 697 S.E.2d 644 at 654 (holding that "[i]f there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action, the question is on for the jury").

The court rejects each of the Estate's arguments as to why these claims should not be barred by the statue of limitations. The court first considers the Estate's argument that knowledge of a potential claim could not have been found until new counsel was hired and then the Estate's argument that there is conflicting evidence as to whether the Estate knew or should have known there was a cause of action.

### 1. The **True** Justification

Facts other than advice of new counsel put the Estate on notice that a claim might exist against defendants, and therefore, protection by the discovery rule is not applicable. In True, the South Carolina Supreme Court held, "absent other facts", a client is protected by the discovery rule when, relying on the advice of counsel, the client fails to otherwise bring a claim with the statute of limitations. True, 489 S.E.2d at 617. The court in True then goes on to explain what "other facts" would not give a client protection under the discovery rule. Id. The True court holds that, "knowledge of the injury does not, a fortiori, give rise to a suspicion of any impropriety by her attorney . . . but by knowledge of facts, diligently acquired, sufficient to put an injured person on notice of the existence of a cause of action against another." Id.; see Dean v. Ruscon Corp., 468 S.E.2d 645,

363, (S.C. 1996) ("According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered")  In other words, notice of a potential claim – not knowledge of the injury – is a type of "other fact" when the discovery rule would start the running of the statute of limitations in a legal malpractice claim.

Notice of a potential claim for legal malpractice exists when a client expresses concern of their attorney's conduct. See Vieira, 2015 WL at *7 (holding that, under South Carolina law, suspicion of their attorney's conflict in a transaction put claimant sufficiently "on notice that . . . some claim against [their attorney] might exist", and therefore, the statute of limitation begins to run upon such notice); Mitchell v. Holler, 429 S.E.2d at 795 (holding the statute of limitations begins to run on the date plaintiff–client complained about her attorney's conduct in providing legal services because that date was when plaintiff–client "knew or should have known that she might have a claim" of legal malpractice).  As discussed above, the Estate was aware of the "divided loyalties" of the defendants on February 8, 2012 at the latest.  ECF No. 65–34 at 2.  The expressing of the "divided loyalties" is sufficient to establish notice that the Estate may have a claim against the defendant.  See Vieira, 2015 WL at *7 (holding that, under South Carolina law, suspicion of their attorney's conflict in a transaction put claimant sufficiently "on notice that . . . some claim against [their attorney] might exist", and therefore, the statute of limitations begins to run upon such notice); Mitchell v. Holler, 429 S.E.2d at 795 (holding the statute of limitations begins to run on the date plaintiff–client complained about her attorney's conduct in providing legal services because that date was when plaintiff–client "knew or should have known that she might have a claim" of legal

malpractice). This notice is the fact – not the fact that the Estate did not discover its injury until hiring new counsel – that began the running of the statute of limitations. Therefore, the court finds that the Estate's argument, that the Estate is protected by the discovery rule, fails.

## 2. The **Manios** Justification

There is no conflicting evidence as to when the Estate knew or should have known a claim existed against the defendants, and therefore, the date when the statute of limitations began to run is not a question for the jury. In <u>Manios</u>, the South Carolina Court of Appeals held that the date the statutes of limitations began to run was a jury question because "there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action". <u>Manios</u>, 697 S.E.2d at 654. However, the South Carolina Court of Appeals has also held that the date the statute of limitations began to run is not a question for the jury when there is "no dispute regarding the information that was readily available to them" to show when the claimant knew or should have known there was a potential cause of action. <u>Personal Care, Inc. v. Theos</u>, 825 S.E.2d 281, 287 (S.C. Ct. App. 2019); <u>see</u> <u>Burgess</u>, 386 S.E.2d 798 at 800 ("A party cannot escape the application of [the discovery rule] by claiming ignorance of existing facts and circumstances, because the law also provides that if such facts and circumstances <u>could have been known</u> to the party through the exercise of ordinary care and reasonable diligence, the same result follows" (emphasis in original)).

As discussed above, the Estate expressing the defendants' "divided loyalties" was sufficient to establish that the Estate knew or should have known it had a claim against the defendants. <u>See</u> <u>Vieira</u>, 2015 WL at *7 (holding that, under South Carolina law,

suspicion of their attorney's conflict in a transaction put claimant sufficiently "on notice that . . . some claim against [their attorney] might exist", and therefore, the statute of limitations begins to run upon such notice). The evidence is in an email the Estate sent to defendants. ECF No. 65–34 at 2. There is no conflicting evidence as to the date of this email, February 8, 2012. Id. Therefore, the court finds that Estate's argument, the date the statutes of limitations began to run involves questions for the jury, fails.

The arguments made by the Estate do not justify an application of the discovery rule, there is no conflicting evidence as to when the Estate knew or should have had notice of a claim against defendants, and the date when the Estate knew or should have known of a possible claim against defendants was beyond three years from the date the statute of limitations began to run on the Estate's claim. Therefore, the court grants the defendants' motions for summary judgment because on all the claims brought by the Estate are barred by the statute of limitations.[4]

---

[4] Defendants also argues summary judgment is warranted because of: (1) lack of evidence that Keith did not understand and agree to the 2009 Transaction, (2) ratification, waiver, and/or estoppel, (3) lack of knowledge as to the claim of aiding and abetting a breach of fiduciary duty, (4) lack of any damages suffered as a result of the 2009 Transaction, and (5) lack of evidence to support the claims of attorney's fees and punitive damages. ECF No. 144-1 at 14–28, 30–34. The court does not rule on any of these arguments because they are rendered moot by the court's grant of summary judgment based on the statute of limitations.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** defendants' motion for

summary judgment.

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 6, 2019**
**Charleston, South Carolina**