**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| WENDY C.H. WELLIN, *on behalf of the Estate of Keith S. Wellin as its duly appointed Special Administrator*, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THOMAS M. FARACE, ESQ., *individually and as agent for Nixon Peabody, LLP*, and NIXON PEABODY, LLP, )<br>)<br>)<br>)<br>Defendants. )<br>_____ ) | No. 2:16-cv-00414-DCN<br><br>**ORDER** |

This matter is before the court on witness Hood Law Firm, LLC's ("Hood Law Firm") motion to quash, ECF No. 245, and plaintiff Wendy C.H. Wellin's ("Wendy"), on behalf of the Estate of Keith S. Wellin as its duly appointed Special Administrator (the "Estate"), motion to quash, ECF No. 246. For the reasons set forth below, the court grants both motions.

## I.   BACKGROUND

Because the parties are well-acquainted with this litigation, the court will provide only a brief recitation of the underlying facts and focus on the matters at hand. This case involves claims that defendants Thomas M. Farace, individually and as an agent for Nixon Peabody, LLP, ("Farace") and Nixon Peabody, LLP ("Nixon Peabody," together with Farace, "defendants") engaged in legal malpractice while providing estate planning services to Keith S. Wellin ("Keith"). In approximately 2001, defendants began representing Keith with respect to his estate planning, both individually and as Trustee of the Keith S. Wellin Florida Revocable Living Trust dated December 11, 2001 (the

1

"Revocable Trust"), which defendants drafted on Keith's behalf. In 2003, Keith entered into a series of transactions to reduce the amount of estate taxes due upon his death (the "2003 Transaction"). Acting on advice from Farace, Keith and his children, Peter J. Wellin ("Peter"), Cynthia W. Plum ("Ceth"), and Marjorie W. King ("Marjorie") (collectively, the "Wellin Children"), established Friendship Partners, L.P. ("Friendship Partners"). This limited partnership was established using the "Strangi" strategy and was funded with shares of Keith's Berkshire Hathaway Class A stock (the "Berkshire Stock"), valued at approximately $90 million. ECF No. 62-4 at 23–30; ECF No. 62-7 at 26. At the time Friendship Partners was formed, Keith owned 98.9% of the partnership, while a separate limited liability company controlled by the Wellin Children owned the remaining 1.1% of the partnership. Wellin v. Wellin et. al., No. 2:13-cv-01831-DCN (hereinafter, "Wellin v. Wellin") (ECF No. 301-1 at 22).

On November 7, 2006, Farace sent Keith a letter enclosing a compilation of Keith's net worth and taxable estate. In the letter, Farace stated that most practitioners were advising clients to no longer rely on the "Strangi" strategy for potential estate tax savings. Farace accordingly recommended alternative tax-saving techniques, including a sale of Keith's limited partnership units to an intentionally defective grantor trust, which was an option that Farace had previously presented to Keith in 2001. Keith did not immediately take any action, and the existing structure of Friendship Partners remained in place.

Keith was diagnosed with cancer in 2008. Around that time, Farace again recommended that Keith consider selling his limited partnership units to an intentionally defective grantor trust. On November 2, 2009, pursuant to the advice and direction of

defendants, Keith established the Wellin Family 2009 Irrevocable Trust (the "Irrevocable Trust"), which named the Wellin Children as trustees. On November 30, 2009, Keith, via the Revocable Trust, sold his partnership units in Friendship Partners to the Irrevocable Trust (the "2009 Transaction"). As a result of the 2009 Transaction, Keith was issued a promissory note with a face value of $49,800,000, which was approximately 55% of the value of the underlying Berkshire Stock. Farace predicted a future estate tax savings of between $14 million and $18 million based on the 2009 Transaction.

After receiving a letter from Farace on January 6, 2010, Keith expressed confusion regarding the impact of the 2009 Transaction on Keith's estate tax liability. In response, Farace sent follow-up letters in January 2010, November 2011, and November 2012 further summarizing the 2009 Transaction. At no point did Keith and Farace discuss the impact of the 2009 Transaction if the Berkshire Stock were to be sold prior to Keith's death. Wellin v. Wellin (ECF No. 599-5 at 5).

In June 2013, Keith terminated his attorney-client relationship with Farace and hired new counsel. On July 3, 2013, Keith sued his three children seeking to set aside the 2009 Transaction, alleging that he "did not know or understand that he had lost all control over and access to his partnership interests" in the 2009 Transaction. Wellin v. Wellin (ECF No. 301). The complaint in that case further alleged that Keith "unknowingly sold his partnership interest for less than market rate while also retaining the income tax liability should any of the [Berkshire Stock] or the partnership interests be sold." Id. Wellin v. Wellin was later dismissed without prejudice upon settlement of the case. Id. (ECF No. 978).

Keith died on September 14, 2014. On February 10, 2016, the Estate filed the instant action against defendants alleging causes of action for negligence, breach of fiduciary duty, breach of contract, and aiding and abetting breach of fiduciary duty. ECF No. 1, Compl. In the amended complaint, now the operative complaint, the Estate further alleges that defendants designed and implemented estate planning structures in 2003 and 2009 that "failed to adequately protect the interests of [Keith]." E.g., ECF No. 9, Amend. Compl. ¶ 51. The Estate further alleges that defendants failed to "inform or advise [Keith] as to the inherent risks and consequences of participating in [the] transaction[s]." See, e.g., id. ¶ 51. Finally, the Estate alleges that defendants aided and abetted Peter and Ceth in breaching fiduciary duties owed to Keith in connection with the 2009 Transaction. Id. ¶ 69.

On November 6, 2019, the court granted summary judgment in favor of defendants, finding that the Estate's claims were barred by the statute of limitations. ECF No. 208. On January 6, 2020, the court denied the Estate's motion to alter or amend judgment. ECF No. 214. The Estate appealed the grant of defendants' motion for summary judgment and denial of the motion to alter or amend to the United States Court of Appeals for the Fourth Circuit, ECF No. 216, and on November 21, 2021, the Fourth Circuit vacated the court's judgment and remanded the case for further proceedings, ECF No. 219 (reproducing the Fourth Circuit opinion).

On September 19, 2022, Hood Law Firm filed a motion to quash or modify a subpoena that it had been served. ECF No. 245. On the same day, the Estate filed a motion to quash or modify the subpoena served upon Hood Law Firm and two other law firms. ECF No. 246. The Estate responded in opposition to both motions on October 3,

2022. ECF No. 247. The Estate replied on October 11, 2022, ECF No. 249, while Hood Law Firm did not file a reply. The court held a hearing on the motions on October 11, 2022.[1] ECF No. 250. As such, the motions have been fully briefed and are now ripe for review.

## II.  STANDARD

Under Federal Rule of Civil Procedure 45, a party may compel a nonparty's attendance to a deposition. Rule 45 also permits the subpoenaed nonparty to quash or modify a subpoena where it, inter alia, "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The scope of discovery under a subpoena is the same as the scope of discovery under Federal Rule of Civil Procedure 26(b). Cook v. Howard, 484 F. App'x 805, 812 (4th Cir. 2012). When discovery is sought from nonparties, however, its scope must be limited even further. Va. Dep't of Corr. v. Jordan, 921 F.3d 180, 189 (4th Cir. 2019). As the Fourth Circuit explained in Jordan,

> Nonparties are "strangers" to the litigation, and since they have "no dog in [the] fight," they have "a different set of expectations" from the parties themselves. Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998). Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery. For example, a party's email provider might well possess emails that would be discoverable from the party herself. But unless the email provider can offer important information that cannot be obtained from the party directly, there would be no cause for a subpoena against the provider.
>
> A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against

---

[1] At the hearing, the court also heard arguments on defendants' motion for summary judgment, ECF No. 144 (as supplemented by ECF No. 238). That motion remains pending as the court has asked for supplemental briefs on an issue discussed during the hearing.

a nonparty "subjects a person to undue burden" and must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iv). As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient. In re Modern Plastics Corp., 890 F.3d 244, 251 (6th Cir. 2018); Citizens Union of N.Y.C. v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). But courts must give the recipient's nonparty status "special weight," leading to an even more "demanding and sensitive" inquiry than the one governing discovery generally. In re Public Offering PLE Antitrust Litig., 427 F.3d 49, 53 (1st Cir. 2005).

Id.

Likewise, Federal Rule of Civil Procedure 26(c) authorizes the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense" by forbidding or limiting the scope of discovery. "The standard for issuance of a protective order is high," Wellin v. Wellin, 211 F. Supp. 3d 793, 800 (D.S.C. 2016), order clarified, 2017 WL 3620061 (D.S.C. Aug. 23, 2017), and the movant "bears the burden of establishing good cause," Slager v. S. States Police Benevolent Ass'n, Inc., 2016 WL 4123700, at *2 (D.S.C. Aug. 3, 2016). A motion for a protective order requires the court to "weigh the need for the information versus the harm in producing it." Wellin, 211 F. Supp. at 800 (quoting A Helping Hand, LLC v. Balt. Cnty., 295 F. Supp. 2d 585, 592 (D. Md. 2003)). In determining whether to quash a subpoena or issue a protective order, as with most matters of discovery, the court wields broad discretion. Cook, 484 F. App'x at 812 (motions to quash); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) (protective orders).

### III. DISCUSSION

The court considers Hood Law Firm and the Estate's motions to quash together. Hood Law Firm filed a motion to quash or modify the subpoena for a Rule 30(b)(6) deposition of Hood Law Firm or, in the alternative, for a protective order directing

defendants to narrow the scope of Topic (f) in that subpoena. The Estate objects to the same topic in the 30(b)(6) notice issued to Hood Law Firm and further objects to subpoenas containing the same topic issued to two other law firms: (1) Evans, Carter, Kunes & Bennett, P.A. and (2) Rosen Hagood, LLC. Defendants informed the Estate that they intend to notice similar Rule 30(b)(6) depositions for all three firms. The parties stated at the hearing that they agreed to stipulate that the court's order on the subpoena to Hood Law Firm would apply to the subpoenas to the other two law firms. The court thus reviews topic (f) as stated in the 30(b)(6) notice of intent to depose Hood Law Firm, noting that its ruling applies to the notices issued to the other firms.

Topic (f) requests: "Work performed by Hood Law Firm, LLC as shown on Invoices produced in this case." ECF No. 245-1 at 6. According to Hood Law Firm, the Estate produced 1,773 pages, consisting of thousands of time entries, to defendants, representing more than eight years of work that Hood Law Firm performed on behalf of Keith and the Estate in federal court litigation related to this action. In its amended complaint, the Estate seeks attorneys' fees incurred based on defendants' alleged negligence, breach of fiduciary duty, and breach of contract, Amend. Compl. ¶¶ 54, 60, 66, and defendants argue that they should be allowed to depose a representative from Hood Law Firm about the time entries to determine the reasonableness of the attorneys' fees sought.

Hood Law Firm and the Estate present similar arguments on why the subpoena should be quashed or modified. In essence, they argue that it would be unduly burdensome to prepare "a witness or witnesses to answer questions about thousands of time entries involving multiple attorneys for work performed over more than eight

7

years." ECF No. 245 at 4.  In response, defendants argue that it is unreasonable for the Estate to seek to recover all legal fees expended in related litigation but simultaneously object to inquiries about the nature of the work performed by the firms.  Defendants also argue that because the Estate produced thousands of pages of legal fee invoices, the Estate has effectively shifted the burden onto defendants to negate proximate cause—an element of the Estate's legal malpractice claim.

Federal Rule of Civil Procedure 30(b)(6) requires a corporation to respond to a deposition notice by designating and producing someone familiar with the topics listed in the notice.  Fed. R. Civ. P. 30(b)(6); see Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 268 (2d Cir. 1999).  The designated witness testifies on the corporation's behalf and, thus, testifies not only on his personal knowledge of a subject, but on corporate knowledge.  See Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006).  Thus, in order to comply with the rule, the corporation has an affirmative duty to ensure that its designee has knowledge of all information on the noticed topics reasonably available to the corporation and is prepared to provide complete, binding answers on that information.  See Bd. of Trs. of Leland Stanford Jr. Univ. v. Tyco Int'l Ltd., 253 F.R.D. 524, 526 (C.D. Cal. 2008) (noting that Rule 30(b)(6) implicitly requires a corporate designee to review all matters known or reasonably available to the corporation in preparation for the deposition, even if the documents are voluminous and reviewing them would be burdensome).  As a corollary to the corporation's duty to designate a deposition witness, it must prepare its designee to be able to give binding answers on its behalf and perform a reasonable inquiry for information that is noticed and reasonably available to it.  State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 216 (E.D. Pa.

2008); see also Wilson v. Lakner, 228 F.R.D. 524, 528–29 (D. Md. 2005) (explaining that a corporation's designated deponent is required to make a good faith effort to find out relevant facts).

But reasonably-available information does not mean all information, and Rule 30(b)(6) establishes burdens for both parties.  Specifically, before issuing the notice of deposition, defendants must "describe[] with reasonable particularity the matters on which examination is requested."  Fed. R. Civ. P. 30(b)(6); see Whiting v. Hogan, 2013 WL 1047012, at *11 (D. Ariz. Mar. 14, 2013) ("The burden is on Plaintiffs, as the party requesting the deposition, to satisfy the 'reasonable particularity' standard of Rule 30(b)(6).").  Additionally, Rule 45 permits a subpoenaed party to quash a subpoena where it requires disclosure of privileged or other protected matter" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).  Courts applying these rules have concluded that there is no requirement that a corporate deponent be familiar with information beyond what is relevant to the case or what the deponent can reasonably be expected to prepare for.  See U.S. ex rel. Smith v. Boeing Co., 2009 WL 2777278, at *8 n.16 (D. Kan. 2009) ("[W]hen voluminous documents extending over years are involved, an entity preparing Rule 30(b)(6) witnesses must understand what is being requested . . . . Simply asking a party to provide testimony concerning a 390-page contract or a 190-page manual does not satisfy the requirement of reasonable particularity."); see also Bierk v. Tango Mobile, LLC, 2021 WL 698479, at *3 (N.D. Ill. Feb. 23, 2021) ("There is no requirement that a Rule 30(b)(6) witness memorize thousands of pages of documents and be able to recall in exacting detail the minutia of such voluminous records."); Holden v. Port Auth. of N.Y. & N.J., 2018 WL 11222516, at

*1 (S.D.N.Y. Dec. 12, 2018) ("[A] 30(b)(6) witness cannot be expected to know and testify about every detail of [] every subject."); Murphy v. Kmart Corp., 255 F.R.D. 497, 506 (D.S.D. 2009) (finding that the plaintiff did not notice a Rule 30(b)(6) deposition with reasonable particularity where the plaintiff sought information "regarding (1) the corporate history of four corporate entities, (2) the corporate relationship between these entities, and (3) the bankruptcy of [the parent company]").

Here, Topic (f) notices an intent to depose Hood Law Firm on all work that its lawyers performed in the related litigation, as reflected in the invoices, without any limitation. The court finds the topic to be overly expansive. Defendants requested that the Estate produce all invoices over the relevant time period, and the Estate diligently complied with that request. Now, Hood Law Firm—and the other two firms that rendered services—are being asked to provide supplemental information about those documents that defendants requested. Certainly, the Estate put the matter of those firms' performance directly at issue by claiming that the legal fees would not have been incurred but for defendants' negligence, but it is counterproductive for all parties to have Hood Law Firm's 30(b)(6) deponent prepare to answer questions on every single service provided by the firm over the course of eight-and-a-half years just for Hood Law Firm to arrive at the deposition and ask about the select few entries it has in mind. Due to the agreed-upon time constraints for the deposition, defendants would not have time to ask about every single entry anyways, so defendants would not be prejudiced by having to narrow their requests.

Therefore, under either 30(b)(6)'s reasonable particularity standard or under Rule 45(d)'s undue burden standard, the court grants the motion to quash and orders

10

defendants to refine Topic (f) to specify which time entries it intends to cover with Hood Law Firm's designee. Hood Law Firm and the Estate argue, in the alternative, that the court should enter a protective order or order defendants to pay reasonable costs as needed to fully prepare the corporate deponent to answer questions about all invoice entries. The court agrees that alternatively, if defendants wish to retain the right to question Hood Law Firm on any and all invoices, defendants should pay costs as necessary to prepare Hood Law Firm's deponents for such questioning. If defendants elect this route, Hood Law Firm should provide defendants with an invoice of the fees as calculated based on the time spent reviewing the invoices and a reasonable hourly rate.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motions to quash in accordance with this order.

**AND IT IS SO ORDERED.**

                                        **DAVID C. NORTON**
                                        **UNITED STATES DISTRICT JUDGE**

**October 26, 2022**
**Charleston, South Carolina**