IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Wendy C. H. Wellin, on behalf of the Estate of Keith S. Wellin as its duly appointed Special Administrator, | ) ) ) ) | Civil Action No.  2:16-cv-00414-DCN |
| Plaintiff, | ) ) | |
| vs. | ) ) | **DEFENDANTS' MOTION TO ALTER OR AMEND THE COURT'S ORDER DENYING SUMMARY JUDGMENT** |
| Thomas M. Farace, Esq., individually and as agent for Nixon Peabody, LLP and Nixon Peabody Financial Advisors, LLC; Nixon Peabody, LLP; and Nixon Peabody Financial Advisors, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Pursuant to Federal Rule of Civil Procedure 59(e), Defendants Nixon Peabody and Thomas

Farace (collectively, "Defendants") hereby move this Court for an order altering or amending its

Order (ECF No. 260) (the "Order") denying Defendants' prior motions for summary judgment

(ECF Nos. 62, 144, & 238).  The Court's Order contains at least two clear errors of law that result

in manifest injustice.  *First*, the Court's findings about Keith's understanding of the 2009

Transaction are wholly inconsistent with the theory of damages the Court is seemingly permitting

the Estate to present to the jury.  *Second*, the Court incorrectly found that Keith's prior testimony

is admissible against Defendants, even though the parties taking Keith's deposition had

significantly different motivations to conduct cross-examination and, because of the paltry 30

minutes allotted for the cross-examination, had no meaningful opportunity to develop testimony

on the issues which are now pertinent to this case.  For these reasons, as explained more fully

below, the Court should alter or amend its Order and enter a new Order granting summary

judgment in favor of Defendants.

## STANDARD

A court "may alter or amend a judgment if the movant shows either (1) an intervening change in the controlling law; (2) new evidence that was not available at trial; or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir.2010). "Thus, the rule permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995)). And that includes granting relief "to 'correct manifest errors of . . . fact upon which the judgment is based.'" *Small v. Hunt*, 98 F.3d 789, 797 (4th Cir. 1996) (quoting 11 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE: CIVIL § 2810.1, at 125 (2d ed. 1995)).

## ARGUMENT

The Court should alter or amend the Order to correct clear errors of law, as well as patent errors of fact on which the Order was based, to prevent a manifest injustice. Specifically, the Court should reconsider the Order because (1) findings regarding Keith's knowledge and understanding of the 2009 Transaction are inconsistent with the theory of damages the Court is seemingly allowing the Estate to proffer; and (2) admitting Keith's prior deposition testimony—despite the absence of a predecessor-in-interest or any meaningful *opportunity* to develop crucial cross-examination for present purposes—is an error of law that will fundamentally prejudice Defendants at trial.

**A.    The Court's finding that Keith knew or should have known key aspects of the 2009 Transaction is inconsistent with Plaintiff's theory of damages that the Court is apparently permitting to proceed.**

On Pages 13 and 14 of the Order, the Court found as follows:

- "[T]he fundamental aspects of the 2009 Transaction were either approved by Keith or should have been reasonably discovered by him."

- "Keith signed off and signaled that he understood that facet [transfer of his limited partnership units for a promissory note with static value] of the 2009 Transaction."

- "[T]he documents plainly revealed that the [2009 Transaction] entailed selling partnership units to an intentionally defective grantor trust through which the Wellin Children, as the general partners, had the ability to sell the Partnership's Berkshire Stock."

- "Even if Keith could not be considered to have understood the transaction at the time of signing, he should have reasonably discovered those aspects of the sale in the years following the Transaction."

- "Keith was reasonably on notice of the terms of the 2009 Transaction, and if he found the fundamental purpose of this transaction unpalatable, he had the ability to question Farace about the transaction and ultimately bring claims against him if he desired.  Keith did not do so."

(ECF No. 260 at 13–14).

Despite these findings, the Court later found that the Estate can establish a viable claim by showing that Keith would not have entered into the Transaction if he had understood the potential tax consequences and that the measure of damage for failing to disclose the tax consequences is the "loss in value from accepting the promissory note in exchange for partnership units." *Id.* at 16.

Respectfully, these rulings are irreconcilable.  On the one hand, the Court found that Keith knew, or should have known, and approved the sale of his partnership units in exchange for a promissory note of fixed value bearing a minimal interest rate.  On the other hand, the Court allows Plaintiff, on behalf of Keith's Estate, to ask for Keith's money back—effectively rescinding the entire transaction, even though Keith understood and agreed to its terms—based upon a potential tax risk that never came to pass.  If Keith understood and agreed to sell his partnership units under the terms of the 2009 Transaction, then he should not be permitted to use a risk that never came to pass to posthumously rescind the entire transaction.

The measure of damages for failing to disclose to a seller a potential risk that could arise from the sale of an asset—but doesn't—cannot be the return of the full value of the asset sold. Where, as here, the transaction arises in the estate-planning context, that result is even more perverse. Keith *sought to benefit his children* by giving them control of the BRK-A shares in a way that was advantageous for estate tax purposes. Considered in that context, it makes no sense that his measure of damages would be a return of the BRK-A stock to Keith (or, in this case, his estate). While that may be what Wendy wants, that is not what Keith intended.

If the measure of damage for negligence is to put the plaintiff into the position that he or she would hold but for the alleged breach,[1] then Keith should be restored to the position of having entered into a transaction that was free of the unwanted tax consequences. In other words, the measure of damages is (a) the loss caused by the tax risk or (b) costs incurred attempting to avoid the tax risk. In this case, there is no loss caused by the risk at issue. As this Court and the Fourth Circuit have both conclusively found, no tax was imposed, and the IRS is time-barred from imposing such a tax as this point. Accordingly, in this case, Keith's damages should be limited to any costs incurred by Keith attempting to avoid the tax consequences.

Had the IRS imposed capital gains taxes for the sale of the BRK-A shares held in Friendship Partners, Keith would have owed around $42 million. In that scenario, the appropriate measure of damage from Tom's alleged failure to disclose those taxes would have been $42 million. It does not make sense that because the IRS did not impose a tax, the measure of damages now somehow becomes, according to the Estate's damages expert, a minimum of $150 million

---

[1] *See, e.g.*, *Graham v. Town of Latta*, 417 S.C. 164, 188, 789 S.E.2d 71, 83 (Ct. App. 2016) ("The basic measure of actual damages is the amount needed to compensate the plaintiff for the losses proximately caused by the defendant's wrong so that the plaintiff will be in the same position he would have been in if there had been no wrongful injury.").

and a maximum of more than $400 million—3.5 to 10 times the amount of damages he would have suffered if the tax had been imposed.

Defendants have identified numerous cases standing for the proposition that, to recover for professional negligence based upon the failure to disclose a potential tax risk associated with entering into a transaction, the plaintiff must show the IRS actually imposed the undisclosed tax. *See, e.g.*, *Philips v. Giles*, 620 S.W.2d 750, 751 (Tex. Civ. App. 1981) (abating legal malpractice action, finding no damages had been established because IRS had not assessed taxes, no determination had been made whether the plaintiff was liable for the taxes, and it was possible that none would ever be established); *Hall v. Hobbick*, 192 A.D.3d 776, 779 (N.Y. App. Div. 2021) (dismissing a legal malpractice claim on the basis that "while [the client] alleged that [the law firm] failed to advise him about the tax consequences of the sale, [the plaintiff] did not allege any particular tax consequences that he incurred as a result of the sale"); *Grace v. Allen*, 2012 WL 5893493, at \*3-4, No. 1 CA-CV 11-0695 (Ariz. Ct. App. 2012) (affirming summary judgment in a legal malpractice case and holding the Plaintiff "has not suffered damages as a result of the risk she may have to pay back taxes, interest, and penalties in the future."); *Thomas v. Cleary*, 768 P.2d 1090, 1093 (Alaska 1989) (reversing a jury award and dismissing the claim in a professional negligence action against accountants, finding the plaintiffs "have not suffered the required injury or harm as a result of the defendants' negligence [when] the IRS has never sent . . . a deficiency notice nor imposed any tax assessment"). As noted at the summary judgment hearing, the Estate has not cited a single case to the contrary.

By giving the Estate a pass on this legal requirement and allowing the Estate to seek damages several multiples greater than that to which it would have been owed in the worst-case scenario, the Court committed an error of law which creates a manifestly unjust result in this case.

Accordingly, the Court should amend the Order—at a minimum—to address this inconsistency and find that the damages sought by Plaintiff are limited to costs incurred avoiding the allegedly unwanted tax consequences.

**B.     The Court's ruling that Keith's prior deposition testimony is admissible against Defendants is legally incorrect, rests on erroneous factual findings, and is a highly prejudicial abuse of discretion.**

The Court also incorrectly found that Keith's prior deposition testimony is admissible against Defendants under Federal Rule of Evidence 804(b)(1) because it found that Defendants and the Wellin Children shared a similar motive in developing cross-examination of Keith. The circumstances surrounding that deposition and the testimony itself demonstrate that the Wellin Children did not have a similar motive to develop cross-examination on the key issues in this case. Nor did the Wellin Children have an opportunity to develop such relevant cross-examination in the thirty minutes allotted to them for Keith's deposition in the prior litigation. Allowing the Estate to utilize this unchallenged, self-serving hearsay evidence against Defendants is highly prejudicial because Defendants cannot now cross-examine Keith on these points given that he is dead.

Rule 804(b)(1) allows the admission of previous testimony, which would otherwise be hearsay, when a declarant is unavailable and the prior testimony "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(B). In analyzing whether a party to former litigation is a "predecessor in interest" under Rule 804(b)(1), courts focus "on the similarity of motives between the predecessor in interest and the one against whom the [testimony] is now offered." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 127 (4th Cir. 1995) (quoting *Horne v. Owens-Corning Fiberglas Corp.*, 4 F.3d 276, 282 (4th Cir. 1993)). If the party against whom the deposition is offered demonstrates "distinctions in [the current] case not evident in the earlier litigation that [] preclude[s] similar motives of

witness examination," then the prior testimony does not fall within the Rule 804(b)(1) exception to the hearsay rule. *Horne*, 4 F.3d at 283. "When 'the motives differ, the testimony may not be introduced.'" *Supermarket of Marlinton, Inc.*, 71 F.3d at 127 (citing *Horne*, 4 F.3d at 282). To begin, the Wellin Children took Keith's deposition before he had made any allegations of malpractice against Farace. In fact, Keith's deposition testimony was the first time Keith ever suggested he was dissatisfied with Farace's services. Even if the Court is correct that that the Wellin Children's strategy was to support Farace and his actions, without knowing or being able to anticipate the specific allegations against Farace, counsel for the Wellin Children could not have prepared questions for Keith on this subject during the 30-minute timeframe allotted.

Further, the questions asked—and more importantly the questions that were not asked—during cross-examination demonstrate that the Wellin Children's motives were vastly different from the Defendants' motives in this case. Specifically, the Wellin Children did not explore Keith's recollection of his conversations with Farace about the 2009 Transaction.[2] Counsel for the Wellin Children never asked Keith why he signed the 2009 Transaction documents, wrote checks to effectuate the transaction, and accepted interest payments from the promissory note in the years following. Counsel for the Wellin Children likewise never clarified Keith's understanding of the 2009 Transaction, including whether Keith misunderstood some aspect of the transaction or had no understanding of the transaction whatsoever. These questions, which are the

---

[2] The only mention of Keith's conversations with Farace was a general question as to whether Keith "ever [had] a conversation with Tom Farace about [his] estate planning." ECF No. 257-2 at 49:17-18. When Keith responded, "no," counsel for the Wellin Children asked a handful of follow-up questions to clarify that Keith was, in fact, testifying that he had never spoken with Farace before quickly moving onto questions about Keith's claims of "misrepresentations" by Peter. *Id.* at 49:19-52:3.

lynchpin of this case, were never even addressed in Keith's prior deposition. Defendants will never have the opportunity to ask Keith about any of these subjects.

Moreover, due to the abbreviated format of Keith's deposition, the Wellin Children did not have the "opportunity" to develop this testimony, which is the other minimum requirement for admissibility under 804(b)(1). While case law on the "opportunity" prong is admittedly scant, that does not give the Court license to read it out of the rule. Courts must avoid "an interpretation" of a Federal Rule of Civil Procedure that "contravenes the well-established prohibition against reading a provision in a manner that would make any 'clause, sentence, or word . . . superfluous.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 439–40 (4th Cir. 2003) (quoting *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

Normally, a party has up "to 1 day of 7 hours" to depose a witness. Fed. R. Civ. P. 30(d)(1). Here, counsel for the Wellin Children had 30 minutes. Under this constrained timeframe, counsel for the Wellin Children was required to focus his examination on those issues most pertinent to the claims in that case. Accordingly, even if the Court is correct that the Wellin Children's position was to seek testimony that Farace acted appropriately, this objective was not a primary objective of the deposition and, therefore, was not prioritized by counsel for the Wellin Children. Indeed, with a mere thirty minutes, counsel for the Wellin Children had no "opportunity" to develop anything more than surface level cross-examination on a subject that is critical to Defendants' defense of this delayed legal malpractice action. This lack of opportunity is a critical fact missing from the Court's analysis of this issue. To be sure, the circumstances in which a prior party would not have had an opportunity to fully examine a witness are likely to be rare as the proverbial hen's tooth. But under these unique circumstances, this case fits the bill.

As a result, Keith's naked, self-serving statement that he would not have entered into the 2009 Transaction had he known of certain tax consequences went completely unchallenged in his prior deposition. To be clear, the issue is not that Defendants think the Wellin Children's counsel did a poor job questioning Keith on the issues important to this case; rather, the issue is that—due to the lack of real motive and opportunity—the Wellin Children did not question or challenge Keith on these issues at all. Defendants have no way of correcting this utter failure to follow up on what has now become the most critical aspect of the Estate's case. And because Wendy Wellin waited for over a year after Keith died to sue his lawyers, Defendants will never be able to examine Keith on this critical issue. In other words, Defendants cannot even argue that "[t]he court must allow additional time consistent with Rule 26(b)(1) and (2) . . . to fairly examine the deponent" because Wendy Wellin waited to file this contrived lawsuit against Keith's lawyer after Keith died. Accordingly, allowing this hearsay testimony against Defendants is highly prejudicial, produces a manifest injustice, and amounts to an abuse of the Court's discretion.[3]

For these reasons, the Court should amend the Order to find that Keith's prior testimony is not admissible under Rule 804(b)(1). If it does so, the Court should further reject the Estate's meritless contentions under the other curious theories of admissibility for the reasons explained in Defendants' prior briefing, *see* ECF Nos. 144, 166, & 257, and enter summary judgment in favor of Defendants because the Estate cannot prove an essential element of its claim.

**CONCLUSION**

---

[3] A court abuses its discretion by admitting evidence "when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 362 (4th Cir. 2019) (quoting *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012)). Here, the Court has relied upon erroneous factual or legal premises in finding that there was an opportunity and similar motive to meaningfully cross examine Keith during his deposition on the issues presented in this case.

For the reasons stated above, the Court should grant Defendants' motion to alter or amend the Order.

Respectfully submitted,

/s/Robert E. Stepp
Robert E. Stepp (Fed. ID No. 4302)
Benjamin R. Gooding (Fed. ID No. 11897)
ROBINSON GRAY STEPP & LAFFITTE, LLC
2151 Pickens Street, Suite 500
Columbia, South Carolina 29201
(803) 929-1400
rstepp@robinsongray.com
bgooding@robinsongray.com

**Attorneys for Defendants Thomas M. Farace, Esq., and Nixon Peabody, LLP**

Columbia, South Carolina
January 12, 2023