## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| WENDY C.H. WELLIN, *on behalf of the Estate of Keith S. Wellin as its duly appointed Special Administrator*, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:16-cv-00414-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| THOMAS M. FARACE, ESQ., *individually and as agent for Nixon Peabody, LLP*, and NIXON PEABODY, LLP, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on defendants Thomas M. Farace, individually and as an agent for Nixon Peabody, LLP, ("Farace") and Nixon Peabody, LLP's ("Nixon Peabody," together with Farace, "defendants") motion to alter or amend, ECF No. 262. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

Because the parties are well-acquainted with this litigation, the court will provide only a brief recitation of the underlying facts and focus on the matters at hand. This case involves claims that defendants committed legal malpractice while providing estate planning services to Keith S. Wellin ("Keith"). In approximately 2001, defendants began representing Keith with respect to his estate planning, both individually and as Trustee of the Keith S. Wellin Florida Revocable Living Trust dated December 11, 2001 (the "Revocable Trust"), which defendants drafted on Keith's behalf. In 2003, Keith entered into a series of transactions to reduce the amount of estate taxes due upon his death (the "2003 Transaction"). Acting on advice from Farace, Keith and his children, Peter J.

Wellin ("Peter"), Cynthia W. Plum ("Ceth"), and Marjorie W. King ("Marjorie") (collectively, the "Wellin Children"), established Friendship Partners, L.P. ("Friendship Partners"). This limited partnership was established using the "Strangi" strategy and was funded with shares of Keith's Berkshire Hathaway Class A stock (the "Berkshire Stock"), valued at approximately $90 million. ECF No. 62-4 at 23–30; ECF No. 62-7 at 26. At the time Friendship Partners was formed, Keith owned 98.9% of the partnership, while a separate limited liability company controlled by the Wellin Children owned the remaining 1.1% of the partnership. Wellin v. Wellin et. al., No. 2:13-cv-01831-DCN (hereinafter, "Wellin v. Wellin") (ECF No. 301-1 at 22).

On November 7, 2006, Farace sent Keith a letter enclosing a compilation of Keith's net worth and taxable estate. In the letter, Farace stated that most practitioners were advising clients to no longer rely on the "Strangi" strategy for potential estate tax savings. Farace accordingly recommended alternative tax-saving techniques, including a sale of Keith's limited partnership units to an intentionally defective grantor trust, which was an option that Farace had previously presented to Keith in 2001. Keith did not immediately take any action, and the existing structure of Friendship Partners remained in place.

Keith was diagnosed with cancer in 2008. Around that time, Farace again recommended that Keith consider selling his limited partnership units to an intentionally defective grantor trust. On November 2, 2009, pursuant to the advice and direction of defendants, Keith established the Wellin Family 2009 Irrevocable Trust (the "Irrevocable Trust"), which named the Wellin Children as trustees. On November 30, 2009, Keith, via the Revocable Trust, sold his partnership units in Friendship Partners to the Irrevocable

Trust (the "2009 Transaction"). As a result of the 2009 Transaction, Keith was issued a promissory note with a face value of $49,800,000, which was approximately 55% of the value of the underlying Berkshire Stock. Farace predicted a future estate tax savings of between $14 million and $18 million based on the 2009 Transaction.

After receiving a letter from Farace on January 6, 2010, Keith expressed confusion regarding the impact of the 2009 Transaction on Keith's estate tax liability. In response, Farace sent follow-up letters in January 2010, November 2011, and November 2012 further summarizing the 2009 Transaction. At no point did Keith and Farace discuss the impact of the 2009 Transaction if the Berkshire Stock were to be sold prior to Keith's death. Wellin v. Wellin (ECF No. 599-5 at 5). The failure to inform Keith about the income tax liability that would result from the Wellin Children selling their interests during Keith's lifetime is at the heart of this dispute.

In June 2013, Keith terminated his attorney-client relationship with Farace and hired new counsel. On July 3, 2013, Keith sued his three children seeking to set aside the 2009 Transaction, alleging that he "did not know or understand that he had lost all control over and access to his partnership interests" in the 2009 Transaction. Wellin v. Wellin (ECF No. 301). The complaint in that case further alleged that Keith "unknowingly sold his partnership interest for less than market rate while also retaining the income tax liability should any of the [Berkshire Stock] or the partnership interests be sold." Id. Wellin v. Wellin was later dismissed upon settlement of the case. Id. (ECF No. 978).

In November and December 2013, the Wellin Children sold the shares held by Friendship Partners for $157 million. Keith died on September 14, 2014. On February 10, 2016, plaintiff Wendy C.H. Wellin ("Wendy"), on behalf of the Estate of Keith S.

Wellin (the "Estate") as its duly appointed Special Administrator, filed the instant action against defendants alleging causes of action for negligence, breach of fiduciary duty, breach of contract, and aiding and abetting a breach of fiduciary duty.[1]  ECF No. 1, Compl.  In the amended complaint, now the operative complaint, the Estate adds that defendants designed and implemented estate planning structures in 2003 and 2009 that "failed to adequately protect the interests of [Keith]."  E.g., ECF No. 9, Amend. Compl. ¶ 51.

On November 6, 2019, the court granted summary judgment in defendants' favor, finding that the Estate's claims were barred by the statute of limitations.  ECF No. 208.  The Estate appealed, and on November 21, 2021, the United States Court of Appeals for the Fourth Circuit vacated the court's judgment and remanded the case for further proceedings.  ECF No. 219; Wellin ex rel. Wellin v. Farace, 2021 WL 5445968 (4th Cir. Nov. 22, 2021).  Following the Fourth Circuit's decision, defendants filed a supplemental memorandum of law in support of their motions for summary judgment.  ECF No. 238.  On December 19, 2022, the court denied defendants' motions for summary judgment.  ECF No. 260.

On January 13, 2023, defendants filed a motion to alter or amend the court's order.  ECF No. 262.  The Estate responded in opposition on February 6, 2023, ECF No. 267, and defendants replied on February 13, 2023, ECF No. 271.  As such, the motion has been fully briefed and is now ripe for review.

---

[1] The Estate has since conceded its cause of action for aiding and abetting a breach of fiduciary duty.  See ECF No. 229 at 3.

## II.  STANDARD

### A.  Motion to Alter or Amend

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment.  The rule provides an "extraordinary remedy which should be used sparingly."  Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks and citation omitted).  The Fourth Circuit recognizes "only three limited grounds for a district court's grant of a motion under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice."  Wilder v. McCabe, 2012 WL 1565631, at *1 (D.S.C. May 2, 2012) (citing Hutchinson v. Staton, 994 F.2d 1076 (4th Cir. 1993)).  To qualify for reconsideration under the third exception, an order cannot merely be "maybe or probably" wrong; it must be "dead wrong," so as to strike the court "with the force of a five-week-old, unrefrigerated dead fish."  TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (quoting Bellsouth Telesensor v. Info. Sys. & Networks Corp., 1995 WL 520978, *5 n.6 (4th Cir. 1995) (unpublished)).  Ultimately, the decision whether to reconsider an order resulting in judgment pursuant to Rule 59(e) is within the discretion of the district court.  See Hughes v. Bedsole, 48 F.3d 1376, 1382 (4th Cir. 1995).

### B.  Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some

5

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

On December 19, 2022, the court denied defendants' motions for summary judgment, ECF Nos. 62, 144, both of which were supplemented by ECF No. 238. ECF No. 260 (the "December Order"). In accordance with the Fourth Circuit's opinion, the court limited the Estate to arguing on remand that defendants were liable for Farace's alleged failure to properly advise Keith of the potential tax liabilities in the 2009 Transaction. Defendants argued that given that limitation, the Estate lacked standing because no tax liabilities have or will come to pass. ECF No. 238 at 8. Alternatively, defendants reiterated their view that there was no evidence Keith would have acted differently had he known of the tax implications. Id. at 9.

With respect to the standing argument, the court concluded that defendants had failed to demonstrate that the Estate suffered no legally-cognizable injury, even with the

court holding—and the Estate all but conceding—that any tax consequences are precluded. ECF No. 260 at 16–17. With respect to the evidentiary dispute, the court concluded that there were genuine issues of material fact regarding whether Keith relied upon Farace's alleged misrepresentations or omissions to Keith's detriment. Id. at 25.

Defendants now move to alter or amend the court's order. ECF No. 262. Specifically, defendants contend that the court made "at least two clear errors of law that result in manifest injustice." Id. at 1. First, defendants argue that the court's findings about the 2009 Transaction are inconsistent with the theory of damages that the Estate is now pursuing. Second, defendants maintain that the court, in considering the evidence, should not have admitted Keith's prior deposition testimony from a preceding case. The court addresses each argument in turn.

## A. The Estate's Theory of Damages

Defendants begin by observing that per the court's order, the Estate is limited to arguing that Keith was misled about the tax consequences of the 2009 Transaction and not about any of the other fundamental aspects of the transaction. ECF No. 262 at 2–3. On that point, defendants are correct. In reaching its conclusion in the December Order, the court principally relied on the Fourth Circuit's opinion, which held that the Estate's malpractice claim "is based on the attorney's alleged failure . . . to advise [Keith] fully of potential tax liabilities in implementing an estate-planning strategy." Wellin, 2021 WL 5445968, at *1. Separately, the court also noted the existence of evidence that suggested Keith, at minimum, signed off on documents that revealed the basic workings of the 2009 Transaction—i.e., that it entailed selling the partnership units to an intentionally defective

grantor trust through which the Wellin Children, as the general partners, had the ability to sell the limited partnership's Berkshire Stock.  ECF No. 260 at 13–14.

But the court drew a line in the sand at the tax consequences of the 2009 Transaction and found, in contrast, that there was a genuine dispute as to whether the tax consequences were ever disclosed.  Accordingly, the court permitted the Estate to argue that Keith unwittingly entered into the 2009 Transaction and suffered an injury after the Berkshire Stock appreciated after he transferred it and the stock was ultimately sold in 2013.  Now, defendants claim that allowing the Estate to pursue damages for the lost profits of the Berkshire Stock is "irreconcilable" with the court's other holdings.  ECF No. 262 at 3.  Defendants contend that since Keith understood the core terms of the 2009 Transaction—i.e., that he was getting a promissory note with a fixed value in return for his partnership units—the Estate should not be allowed to rescind the entire transaction when the only dispute is over the tax liabilities.

Stated another way, defendants contend that given the "appropriate measure of damage[s] . . . would have been $42 million" had the IRS imposed the capital gains taxes, "it does not make sense" to now impose much higher damages based on the lost appreciation of the partnership units when the IRS never imposed the tax.  ECF No. 262 at 4.  Defendants' argument rests on a flawed premise.  Defendants have not shown, as a matter of law, that an IRS-imposed tax would originally have been the only proper award in a professional negligence case relating to a failure to disclose a tax risk.  In the instant motion, defendants cite to cases that they raised in support of their motion for summary judgment, and each of those four cases are state court cases that applied other states' laws.  See generally ECF No. 240 at 4 (citing state court cases from Texas, New York,

and New Mexico); ECF No. 262 at 5 (same and adding a citation to a state court case

from Alaska).  As such, defendants they fail to demonstrate how the court overlooked

<u>controlling</u> decisions and made clear errors of law in reaching its conclusion.[2]

       To drill down on the issue even further, the court notes that contrary to the non-

binding decisions cited by defendants,[3] South Carolina courts recognize "lost profit"

damages in malpractice cases, even if they may be difficult to prove.  For example, in

<u>Manios v. Nelson, Mullins, Riley & Scarborough, LLP</u>, the court considered on appeal

whether a trial court erred in rejecting lost profits in an attorney-malpractice case.  697

S.E.2d 644 (S.C. Ct. App. 2010).  In <u>Manios</u>, the plaintiffs were real estate investors who

agreed to provide a borrower with separate loans of $1.1 million and $1.6 million, both to

be secured by a tract of land.  <u>Id.</u> at 648.  The plaintiffs retained the defendant, a law firm,

to handle both transactions.  <u>Id.</u>  Based on the defendant's title work, the plaintiffs

believed that they had first and second priority on default.  <u>Id.</u>  When the borrower

defaulted, the plaintiffs discovered a third party's recorded subordination agreement, of

---

[2] Additionally, the court notes that some of defendants' cases have also been called into question.  <u>See</u> <u>In re Swift</u>, 129 F.3d 792, 800 n.43 (5th Cir. 1997) (explaining that the Texas Court of Appeal's ruling in <u>Philips v. Giles</u>, 620 S.W.2d 750 (Tex. Ct. App. 1981), was "troubling in that the court dismissed the suit because of a lack of damages when there was a genuine issue of fact concerning the existence of damages").

[3] To the extent defendants argue that the court should nevertheless turn to the out-of-state cases they cite because those cases specifically concerned malpractice claims involving tax liabilities that were never imposed by the IRS, the court disagrees that the distinction elevates those cases over relevant South Carolina authorities.  If it were merely a matter of collecting non-binding authorities, the court notes that other states have reached decisions that oppose defendants' position, too.  <u>See, e.g.</u>, <u>Coleman v. Duane Morris, LLP</u>, 58 A.3d 833, 840 (Pa. Super. Ct. 2012) (reversing judgment on the pleadings after determining that the plaintiffs could plausibly seek damages "for the value of their stock, which they bargained away based on their reliance on [the d]efendants' legal advice" concerning the plaintiffs' responsibility for taxes in a stock sale).  The court finds South Carolina cases to be most instructive.

which the defendant had allegedly never informed the plaintiffs.  Id.  After the third party was awarded partial entitlement to proceeds from the sale, the plaintiffs sued the defendant for breach of contract and other claims.  Id. at 649.  As part of the breach of contract claim, the plaintiffs asserted that since they "had to forego other investment opportunities" because of the litigation that resulted from the defendant's actions, they were entitled to lost profits.  Id. at 651.  At the close of the case, the trial court granted the defendant's motion to strike damages for lost profits.  Id.  On appeal, the court affirmed, and in doing so explained that lost profits may be recovered in a breach of contract action[4] under a three-prong test: (1) the profits must have been prevented or lost as a natural consequence of the breach of contract; (2) the profits must be foreseeable, i.e., the lost profits must have been within the contemplation of the breaching party at the time the contract was made; and (3) the profits must be established with reasonable certainty and cannot be conjectural or speculative.  Id. (citing Drews Co. v. Ledwith-Wolfe Assocs., 371 S.E.2d 532, 535–36 (S.C. 1988)).  Although the court ultimately determined that the lost profits were not foreseeable, the court's ruling confirms that such damages are not per se barred in a malpractice action.  Id. at 651–52.

Similarly, in Mali v. Odom, the court recognized that future lost profits could be pursued, but it ultimately reversed the trial court's decision awarding such damages.  367 S.E.2d 166, 170 (S.C. Ct. App. 1988).  In Mali, the plaintiffs contracted to purchase property with the intention of building and operating a school, and they retained the

---

[4] Although Manios described lost profits as a consequential damage arising from a breach of contract, other courts have explained that lost profits may arise from a breach of fiduciary duty as well.  See Moore v. Moore, 599 S.E.2d 467, 475 (S.C. Ct. App. 2004).

defendant, an attorney, to examine the title to the property and handle the closing.  Id. at 168.  Following closing but before construction began, the adjoining landowners brought an action to enforce covenants restricting the land to residential use, and the plaintiff-landowners later brought an action against the defendant for negligence.  Id.  At the malpractice trial, the trial court awarded damages to the plaintiffs for lost profits, as reflected by "the school's anticipated monthly income and expenses."  Id. at 170.  On review, the Court of Appeals reversed, holding that the anticipated income and expenses of the school were too speculative and that lost profits must be based on a "standard or fixed method" by which profits may be estimated.  Id. (citing S.C. Fin. Corp. of Anderson v. West Side Fin. Co., 113 S.E.2d 329, 336 (S.C. 1960)).

Manios and Mali are both instructive.  Even though the courts rejected lost profits in both cases, the courts recognized such damages may be recovered if the plaintiff can prove that lost profits are reasonably certain and not merely conjectural or speculative. Defendants may yet be able to show that the lost profits claimed by the Estate are entirely speculative or conjectural—for example, by arguing it would be too speculative to assume that Keith would have refrained from the 2009 Transaction or that he would have held onto the partnership units had he been fully-informed about the tax issues.  But they have not done so.  On this issue, defendants attempt to stretch their arms out wide by claiming they "have argued the damages are wildly speculative."  ECF No. 271 at 1.  As it now stands though, defendants have only framed their argument in terms of standing. They did not—and cannot now—argue that the Estate's claim for lost profits does not comply with South Carolina's standard for proving the same.  In short, despite the court's

willingness to engage it, such an issue was plainly not before the court and, in any event, should be presented to the jury as a factual dispute.

Finally, the court emphasizes again that it must take its cues from the Fourth Circuit. Defendants do not dispute that all the information they present now was before the Fourth Circuit on appeal. This led the panel to acknowledge at the hearing that "the tax consequences that were feared by Mr. Farace never came to pass as a matter of fact." Oral Argument at 17:14–18:58, Wellin ex rel. Est. of Wellin v. Farace, 2021 WL 5445968 (4th Cir. Sept. 22, 2021) (No. 20-1120), https://www.ca4.uscourts.gov/ OAarchive/mp3/. Despite contemplating whether that would result in a lack of standing, id., the Fourth Circuit did not grant summary judgment on that ground. As the court previously noted, had the Fourth Circuit determined that there was no standing based on the lack of IRS-imposed taxes, the appellate court would have dismissed the case sua sponte. See Benham v. City of Charlotte, 635 F.3d 129, 134 (4th Cir. 2011) ("When a question of standing is apparent, but was not raised or addressed in the lower court, it is our responsibility to raise and decide the issue sua sponte." (citation omitted)). For those reasons, the court concludes that its prior order was not premised on a clear error of law and did not result in manifest injustice.

### B. Keith's Testimony

After the court determined that the Estate was limited to arguing that Farace failed to communicate the tax consequences of the 2009 Transaction—but that they could pursue damages under that theory—the court turned to the record evidence of whether Keith would have changed his mind had he received and relied upon proper tax advice. As the court explained in the December Order, "if defendants can show that the tax

implications [would have] had no effect on Keith's decision to enter into the 2009

Transaction," defendants could prove that there was no genuine dispute of material fact

as to the elements of causation and/or damages.  ECF No. 260 at 17.  As part of that

evidence, the court considered Keith's deposition testimony from <u>Wellin v. Wellin</u>—the

case that began as an action by Keith against the Wellin Children in which Keith sought

to set aside the 2009 Transaction on the grounds that it was not in his best interests.

  In their motion for summary judgment in this case, defendants argued that Keith's

testimony was hearsay and did not fall under the exception provided in Federal Rule of

Evidence 804(b)(1)[5] because defendants, as the party whom the testimony is now being

offered against, did not have an opportunity to cross examine Keith.  In the December

Order, the court declined to adopt defendants' position, holding that defendants shared a

"similar motive" with the Wellin Children in developing Keith's testimony.  ECF No.

260 at 20–21 (citing Fed. R. Evid. 804(b)(1)(B)).  The court reasoned that under both

controlling and persuasive caselaw, the predecessor-in-interest requirement is satisfied if

parties shared a "similarity of motives" in challenging the action.  <u>Id.</u> (quoting <u>Horne v.

Owens-Corning Fiberglas Corp.</u>, 4 F.3d 276, 282 (4th Cir. 1993)).  Although defendants

and the Wellin Children were not in privity, the court determined that the Wellin

Children were similarly motivated to show that Keith understood the 2009 Transaction

---

  [5] Rule 804(b)(1) provides that testimony is "not excluded by the rule against hearsay if the declarant is unavailable as a witness" and

  (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

  (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross[], or redirect examination.

fully, including through Keith's conversations with Farace.  <u>See also Horne</u>, 4 F.3d at 283

(explaining that "privity is not the gravamen of the analysis" under Rule 804(b)(1)).

      In the instant motion, defendants argue that the court committed an error of law

by considering Keith's testimony under Rule 804(b)(1).  Defendants partly reiterate their

belief that the Wellin Children cannot be characterized as predecessors in interest because

they took Keith's deposition before he had ever made any allegations of malpractice

against Farace.  ECF No. 262 at 7.  But as the court explained in the December Order, the

parties' claims need not be identical for the court to find that two parties shared a

substantially-similar motive in the cases.  ECF No. 260 at 24 (citing <u>Supermarket of

Marlinton, Inc. v. Meadow Gold Dairies, Inc.</u>, 71 F.3d 119, 127 (4th Cir. 1995)).

Defendants fail to identify any caselaw that the court overlooked in reaching its

conclusion.  Defendants already urged the court to consider the differences between them

and the Wellin Children by, for example, noting the types of questions that they would

have expected a true predecessor to ask.  <u>See</u> ECF No. 257 at 11–12.  But Rule 59

motions are not "opportunities to rehash issues already ruled upon because a litigant is

displeased with the result."  <u>Ridgeway v. Stevenson</u>, 2011 WL 1466325, at *1 (D.S.C.

Apr. 15, 2011).  Defendants' arguments about the shared motives (or lack thereof) were

already considered and do not meet the high standard for a Rule 59(e) motion.

      Defendants also advance a new argument in their motion to alter or amend.  They

argue that Rule 804(b)(1) mandates both an "opportunity" and "similar motive."

According to defendants, even assuming the Wellin Children were predecessors in

interest, they never had the <u>opportunity</u> to develop Keith's testimony because the Wellin

Children were only given thirty minutes total to depose Keith.  While acknowledging that

the caselaw on the word "opportunity" in Rule 804(b)(1) is "scant," defendants urge the court to consider the term and read a temporal element into the requirement.  See ECF No. 262 at 8 ("[W]ith a mere thirty minutes, counsel for the Wellin Children had no 'opportunity' to develop anything more than surface level cross-examination . . . .").

As a preliminary matter, the court notes that just as Rule 59 motions are not meant to relitigate issues already considered and rejected, they generally "may not be used to make arguments that could have been made before the judgment was entered."  Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002).  Moreover, the lack of definitive caselaw hinders rather than helps defendants' cause—particularly on a motion to alter or amend. See also Cury v. Philip Morris USA, 1995 WL 594856, at *2 (S.D.N.Y. Oct. 6, 1995) ("The case law on the question of what constitutes sufficient opportunity to cross-examine for the purposes of 804(b)(1) falls on both sides of the question.").  Absent specific rules or authorities speaking to the issue, the court does not find that it was clear error or manifest injustice to decide the Rule 804(b) issue without considering whether the term "opportunity" included a temporal component.

Finally, even if the court were to consider the caselaw, the court is unconvinced that defendants clearly fall on the right side of the issue.  In the few relevant district court orders that this court has located, courts applying the rule have found that a cross examination need not be lengthy to constitute an "opportunity" under the Rule.  See Mitchell v. Warden, Trumbull Corr. Inst., 2013 WL 3712423, at *6 (S.D. Ohio July 12, 2013) ("Although defense counsel's questioning was not lengthy, we are persuaded that a

meaningful opportunity for cross examination existed.").[6]  Rather, courts that have

excluded deposition testimony under the "opportunity" prong appear to have done so

where the deposition was cut short through no fault of the deposing party.  See A.I.A.

Holdings, S.A. v. Lehman Bros., Inc., 2002 WL 31655323, at *1 (S.D.N.Y. Nov. 25,

2002) (excluding testimony where the deponent failed to return for the second day of a

deposition); Cury, 1995 WL 594856, at *6 (excluding testimony where the deponent

stormed out of the deposition and the court could not readily identify who caused the

disruption).  Here, by defendants' own admission, each side did in fact receive their

allotted time to depose Keith.  That allotted time was shortened due to Keith's

deteriorating health but nevertheless, both parties received equal time for the depositions.

ECF No. 257 at 3.  Any arguments about whether that was sufficient time to develop

Keith's testimony now go to the testimony's weight, rather than its admissibility.  For

those reasons, the court denies defendants' motion and finds that it was not clear error to

consider Keith's prior deposition testimony.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to alter or amend.

---

[6] But see Curtis v. ABB, Inc., 2013 WL 12172646, at *2 (C.D. Cal. June 3, 2013).
In Curtis, the court noted that an average of twenty minutes of deposition time per
defendant to cross examine a decedent "was not so obviously sufficient an amount of
time."  Id.  But the court ultimately ruled that certain defendants did not have an
"opportunity" to depose the decedent because they did not get to examine the decedent at
all.  Id. at *2–3.  To the extent Curtis is incompatible with the court's order, the court
notes it is not controlling.  And to qualify for reconsideration under the third exception,
an order cannot merely be "maybe or probably" wrong; it must be "dead wrong," so as to
strike the court "with the force of a five-week-old, unrefrigerated dead fish."  TFWS, Inc.
v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009).

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 12, 2023**
**Charleston, South Carolina**